[Crim. No. 10354.   Second Dist., Div. Two.   Jan. 17, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. GEORGE ARELLANO, Defendant and Appellant.

James R. Hammerton, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Robert P. Samoian, Deputy Attorney General, for Plaintiff and Respondent.

FLEMING, J. — Arellano appeals from a conviction for possession of heroin (Health & Saf. Code, § 11500) on the ground that evidence against him was obtained by an unlawful seizure.

A telegraphic warrant having been received for Arellano's arrest for violation of parole, Los Angeles police officers went to the hotel where it was rumored he was living in order to arrest him. The officers learned from the manager that a person resembling Arellano was in Room 23. Without announcing their presence or demanding admittance, they unlocked the door to Room 23 with a passkey and pushed it open. Arellano was asleep in bed with a woman who was also registered in the room and who had been living with him for three weeks. The officers handcuffed Arellano and seized a gelatin capsule box on the dresser. Inside the box were capsules containing heroin, for whose possession Arellano was prosecuted and convicted.

Arellano contends the heroin was unlawfully seized because the officers making the arrest forced an entry into his room without first demanding admittance and explaining their purpose, as required by Penal Code section 844. (*People v. Maddox,* 46 Cal.2d 301, 306-307 [294 P.2d 6].) That section provides: "To make an arrest . . . a peace-officer, may break open the door or window of the house in which the person to be arrested is, . . . after having demanded admittance and explained the purpose for which admittance is desired." Admittedly no such demand was made.

The prosecution argues that compliance with section 844 was unnecessary because Arellano was a prisoner on parole whose parole had been revoked; as a parolee he possessed the status of a prisoner in the legal custody of the Department of Corrections; his apprehension merely involved a change in status from constructive custody to actual custody and did not amount to an arrest; hence the provisions of the Penal Code relating to the manner of arrest did not apply to his case.

We do not accept the reasoning of the prosecution as applied to this arrest. While Arellano's parole could have been summarily revoked for cause at any time, we think a revocation of parole is merely the equivalent of an arrest warrant and not of the arrest itself. (Pen. Code, §§ 3056, 3060, 3061, 3063, 3064.) The notion of constructive custody may be useful for purposes of summary parole revocation and for such problems as child custody (*Burge* v. *City & County of San Francisco,* 41 Cal.2d 608, 617-618 [262 P.2d 6]), but we do not think such a legal fiction should be permitted to blur the fact or alter the manner of an actual seizure by force of a person not theretofore physically restrained.

For us the heart of the matter is that a parolee is not in fact under restraint but circulates freely in general society.

Penal Code section 835 defines an arrest as "an actual restraint of the person" of the defendant. The formalities of effecting an arrest have been painfully worked out by trial and error over hundreds of years, and its rules are designed not only to protect the rights of the individual being arrested, but equally to protect the security of those making the arrest, to notify other persons that action authorized by law is involved and that force may be used, and to give third parties an opportunity to arrange their affairs with minimum disruption. ■■■ It may be very well to say that a parolee has limited civil rights and moves about in society fettered by the conditions of his parole and accordingly may be stopped and searched on the street by his parole officer without cause (*People* v. *Hernandez,* 229 Cal.App.2d 143, 147 [40 Cal.Rptr. 100]), but the reasoning which supports such summary visitation on the street or in a public place is inadequate to justify a forceful, unannounced entry into private premises in which a parolee is believed to be located. The rule established by section 844, often expressed by the maxim "Every man's home is his castle", has deep roots in the common law and serves to protect the police as well as the privacy of the occupants. (*Ker* v. *California,* 374 U.S. 23 [83 S.Ct. 1623, 10 L.Ed.2d 726]; *Stoner* v. *California,* 376 U.S. 483 [84 S.Ct. 889, 11 L.Ed.2d 856].) The basic issue here, as we see it, involves the exercise of authority to force open doors to enter a private dwelling. The wisdom of the restrictions on such conduct is illustrated by the facts of this very case, where the actions of the police resulted in a flagrant intrusion on the privacy of the other occupant of the room, an intrusion which would have been largely ameliorated by a proper demand for entry in accordance with the statute. The history and policy of the rule have been set forth at length by Mr. Justice Brennan in *Miller* v. *United States,* 357 U.S. 301, 306 ff. [78 S.Ct. 1190, 2 L.Ed.2d 1332], and again in his dissenting opinion in *Ker* v. *California,* 374 U.S. 23, 47-59 [83 S.Ct. 1623, 10 L.Ed.2d 726], in which he reviews the centuries-old tradition that a demand for entry be made before forcing an entry into a dwelling to arrest a suspected felon. ■■■ We think the 'officers in this case were not excused from complying with the statutory requirement for making an arrest because the man to be arrested was a parolee whose parole had been revoked.

We are fortified in this conclusion by the language of the Penal Code. It provides that no parole shall be revoked without cause (§ 3063); that the written order of any member of the Adult Authority shall be a sufficient warrant for any officer to return to actual custody any paroled prisoner (§ 3060); and that it is "the duty of all peace officers to execute any such order *in like manner as ordinary criminal process.*" (§ 3061.) (Italics added.) The statutory scheme for handling an order revoking parole appears comparable to that for serving an arrest warrant, and it is a logical deduction from the code that both the order of revocation and the warrant of arrest must be served in a similar manner.

Further, section 3064 declares that after revocation of parole and until return to custody a parolee shall be deemed an escape and fugitive from justice. Thus the status of one whose parole has been revoked is comparable to that of an escaped prisoner. Section 855, relating to the retaking of escaped prisoners, states that the pursuer of an escaping prisoner may break open the door or window of a dwelling house "if, after notice of his intention, he is refused admittance." Here again we find a clear statutory intent to observe the customary formalities of a demand for entry before making an arrest, even in the extreme case of an escaped prisoner. A parolee who has been released into society under authority of law is entitled to no fewer formalities on his return to actual custody than are required for the recapture of an escaped prisoner. If a demand for admittance to a dwelling place is required for the capture of an escaped prisoner who has taken the law into his own hands, no less is required for the apprehension of a parolee whose freedom has been granted him by law.

We are mindful that in a given case exigent circumstances may excuse strict compliance with the demand for entry of section 844. These circumstances may include cases where evidence is likely to be destroyed while the demand is being made (*People* v. *Maddox,* 46 Cal.2d 301, 306 [294 P.2d 6]; *People* v. *Russell,* 223 Cal.App.2d 733 [36 Cal.Rptr. 27] [bookmaking]); where the danger to the arresting officer will be increased by the announcement (*People* v. *Hammond,* 54 Cal.2d 846, 854 [9 Cal.Rptr. 233, 357 P.2d 289] [armed addict under influence of heroin]); where the officers reasonably believe the person to be arrested is inside and not responding to their knocking (*People* v. *Carswell,* 51 Cal.2d 602, 607 [335 P.2d 99]); or where the entry is for the pur-

pose of rendering aid to one in distress (*People* v. *Roberts*, 47 Cal.2d 374 [303 P.2d 721]). But none of the exigent circumstances have been presented to us in this case.

Respondent relies on *People* v. *Denne*, 141 Cal.App.2d 499 [297 P.2d 451]; *People* v. *Triche*, 148 Cal.App.2d 198 [306 P.2d 616]; *People* v. *Robarge*, 151 Cal.App.2d 660 [312 P.2d 70]; and *People* v. *Contreras*, 154 Cal.App.2d 321 [315 P.2d 916]. None of these cases holds that police officers may disregard Penal Code sections 844, 855 and 3061 in entering private premises to take into actual custody one whose parole has been revoked.

We conclude that a forcible entry into private premises to return a parolee to actual custody must comply with the statutory rules governing the manner of making arrests, that evidence obtained as a result of an entry which did not comply with the rules should have been excluded (*People* v. *Maddox*, 46 Cal.2d 301, 306-307 [294 P.2d 6]), and that without such evidence the judgment must be reversed.

Judgment reversed.

Roth, P. J., and Herndon, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 16, 1966.