[Crim. No. 9320. In Bank. Mar. 31, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. LUPE REYES CARRILLO, Defendant and Appellant.

388

Lupe Reyes Carrillo, in pro. per., and Bernard S. Grossman, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Harvey D. Unrot, Deputy Attorney General, for Plaintiff and Respondent.

TOBRINER, J.—Charged by information with possession of heroin for sale (Health & Saf. Code, § 11500.5) defendant waived a jury trial; the court found him guilty of possession of heroin, a lesser but necessarily included offense (Health & Saf. Code, § 11500). Defendant now seeks reversal of his conviction, contending that it rests upon evidence obtained in an illegal search and upon a confession obtained in violation of his rights to counsel and to remain silent. As we explain below, both of the theories upon which defendant challenges the legality of the search depend upon disputed questions of fact decided adversely to him in the trial court; as to the confession, the record shows that defendant confessed spontaneously, not as the result of interrogations designed to elicit incriminating statements.

On the morning of January 15, 1963, Sergeant Ginder of the Los Angeles police department learned from defendant's parole officer that defendant had missed his Nalline test, a condition of his parole. Accordingly, on the afternoon of the same day, Sergeant Ginder and Parole Officer Jensen, together with Sergeants Slagle, Leeds, Tralle, and Vernon, went out to arrest defendant at the residence of his "ex-common-law wife," Rose Mesa Juarez. Mrs. Juarez lived in a two-story dwelling with her six children. Defendant resided with his brother a few blocks away, but visited Mrs. Juarez's nearly every day to see his two daughters.

The record contains conflicting evidence as to the manner in which the police entered Mrs. Juarez's home and arrested defendant. Officer Jensen and Sergeants Vernon and Slagle apparently approached the dwelling from the front; the other three officers went to the rear. The officers at the front knocked on the door and, at some point, entered the premises through that door. Because of conflicting testimony, however, we cannot know exactly when and by what means they entered. Sergeant Ginder testified that he was looking through the screen door at the rear when Officer Jensen knocked at the front door. He said that he saw defendant "moving rapidly through the kitchen," and that he "opened the screen door and grabbed him." As to what next occurred Sergeant Ginder testified, "At that time Mr. Jensen and the officers that were at the front door were coming through the front door. . . ." Sergeant Slagle testified that he watched the two officers enter the front door and that he then entered through the rear door following the other officers. Defendant testified that he was in the kitchen with Mrs. Juarez and her sister when the police sud-

denly entered and arrested him. He said that one of the officers who came in the rear door then unlocked the front door and let in the others.

The record also contains conflicting testimony as to whether Mrs. Juarez consented to the ensuing search and, if so, as to the attendant circumstances of her consent. After apprehending defendant, Sergeant Ginder "escorted" him to the front room; the police all gathered in that room, placed defendant in the custody of Parole Officer Jensen, and commenced an exhaustive search of the premises. Sergeant Ginder testified that, a few minutes after the officers entered, he spoke with Mrs. Juarez and that she gave him permission to search. Sergeant Slagle testified that Mrs. Juarez said that there were no narcotics in the house and told the officers "to go ahead and look and see if they could find any." On the other hand, both Mrs. Juarez and her sister testified that the police did not ask for, and Mrs. Juarez did not give, permission to search. They both indicated that Mrs. Juarez was considerably upset at the time.

The search resulted in the discovery of the heroin introduced against defendant at his trial. After approximately one and a half hours, the officers discovered a child's pair of trousers; in the pockets they found heroin. They confronted defendant with it; he admitted it was his. At the trial defendant testified that he told the officers the heroin belonged to him in order to protect the people in the house from arrest.

The trial court rejected defendant's objection to the introduction into evidence of the heroin. Defendant contended that Mrs. Juarez had not consented to the search and that therefore the heroin was the inadmissible fruit of an illegal search. Holding that Mrs. Juarez had in fact consented to the search, the court overruled the objection.

The finding implicit in the trial court's ruling forecloses the arguments defendant now urges as to the illegality of the search. He contends that even if Mrs. Juarez gave a verbal assent to the search, the record establishes an illegal entry by the police which vitiates her assent. In the alternative, he contends that her consent could not be effective because of the assertion of authority implicit in the police entry and presence in her home. Neither of these contentions rests on any new proposition of law and either of them, if supported by the record, would require reversal. ■ The record before us, however, contains conflicting evidence on both of these crucial issues which compose no more than factual conflicts that the trial court necessarily determined adversely to defendant.

Since substantial evidence supports these findings we must affirm.

Defendant's contention that the alleged illegal entry of the police negates the effect of the subsequent assent to the search rests upon *People* v. *Haven* (1963) 59 Cal.2d 713 [31 Cal.Rptr. 47, 381 P.2d 927], and upon Penal Code section 844. *Haven* holds that "A search and seizure made pursuant to consent secured immediately following an illegal entry or arrest . . . is inextricably bound up with the illegal conduct and cannot be segregated therefrom." (P. 719.) Penal Code section 844 forbids a peace officer to break into a house to arrest a felon unless he has first "demanded admittance and explained the purpose for which admittance is desired." ▮ Thus, as defendant correctly urges, consent to search given after an entrance which fails to comply with Penal Code section 844 cannot be effective. (*People* v. *Arellano* (1966) 239 Cal.App.2d 389, 390 [48 Cal.Rptr. 686].)

As we explained in *People* v. *Maddox* (1956) 46 Cal.2d 301, 305-307 [294 P.2d 6], however, Penal Code section 844 is simply a codification of the common law and does not require literal compliance with its terms where "the officer's peril would have been increased or the arrest frustrated." We recognized that "The officer's compliance with [this section] will delay his entry, and cases might arise in which the delay would permit destruction or secretion of evidence. . . ." Since "Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with section 844," we concluded "that when there is reasonable cause to make an arrest and search and the facts known to him before his entry are not inconsistent with a good faith belief on the part of the officer that compliance with section 844 is excused, his failure to comply with the formal requirements of that section does not justify the exclusion of the evidence he obtains." (See also *Ker* v. *California* (1963) 374 U.S. 23 [83 S.Ct. 1623, 10 L.Ed.2d 726].)

▮ The record here contains substantial evidence to support the finding, implicit in the trial court's ruling, that under *People* v. *Maddox, supra,* 46 Cal.2d 301, the police entry did not violate Penal Code section 844. Thus that evidence sustains its finding that Sergeant Ginder entered the premises in the reasonable belief that defendant possessed narcotics and that only such an entry would prevent their destruction by

defendant. When the officers approached the premises they knew that defendant was on parole from a conviction for possession of heroin and that he had failed to report for his Nalline test. Consequently, they had reason to believe that he then possessed narcotics. Sergeant Ginder, one of the officers at the rear door, testified that he saw defendant moving quickly through the kitchen at about the same time that another officer knocked on the front door. The sergeant then entered and "grabbed" defendant.

Our decisions, as well as those of the United States Supreme Court, have more than once recognized the ease and speed with which the disposal of narcotics can be accomplished. (See, e.g., *Ker* v. *California, supra,* 374 U.S. 23, 40; *People* v. *Manriquez* (1965) 231 Cal.App.2d 725, 728 [42 Cal.Rptr. 157]; *People* v. *Holloway* (1964) 230 Cal.App.2d 834, 840 [41 Cal.Rptr. 325]; *People* v. *Samuels* (1964) 229 Cal.App.2d 351, 361 [40 Cal.Rptr. 290].) In view of the above facts we must conclude that substantial evidence supports a finding that the police entry was reasonably necessary to prevent the destruction of contraband; the entry was therefore not illegal.

 Defendant argues that even if the facts justify Officer Ginder's entrance, no evidence shows any justification for the officers who entered through the front door, since they could not have seen defendant "moving rapidly" through the kitchen. The record contains some evidence to support this possibility; however, *defendant himself* testified that *the officers who came in through the rear door unlocked the front door and let in the other officers.*

 We must also reject defendant's contention that the police entry and presence in Mrs. Juarez's home rendered her consent to the search ineffective. The trial court found that she consented to the search; it is implicit in that finding that it was an effective consent; on the record before us we are bound by that finding. It is true that in *People* v. *Michael* (1955) 45 Cal.2d 751, 754 [290 P.2d 852], we recognized "that the appearance of four officers at the door may be a disturbing experience and that a request . . . made to a distraught or timid woman might under certain circumstances carry with it an implied assertion of authority that the occupant should not be expected to resist." But this issue of fact, which we must assume obtained the consideration of the trial court, was resolved against defendant.

We surely cannot hold that, *as a matter of law,* Mrs. Juarez consented to the search in response to an assertion of authority implicit in the police presence in her home. It is true

that the record indicates that the police appeared rather suddenly and that some confusion ensued; that Mrs. Juarez and her sister testified that Mrs. Juarez was upset, and that they also testified that Mrs. Juarez did not give any consent to the search. On the other hand, the police officers unequivocally testified that Mrs. Juarez said to "go ahead" and search, that "she didn't care." The record thus supports a finding of an express and effective consent to search.

Finally, we find no merit in defendant's contention that the introduction of his confession violated the rule of *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. We have said that when the "officers have arrested the suspect and the officers have undertaken a process of interrogations that lends itself to eliciting incriminating statements, the accusatory or critical stage has been reached and the suspect is entitled to counsel." (*People* v. *Stewart* (1965) 62 Cal.2d 571, 577 [43 Cal.Rptr. 201, 400 P.2d 97].) The record here, however, establishes that defendant's statement constituted a spontaneous response to the discovery of the narcotics that was uttered before the advent of the accusatory stage. Thus, the trial court committed no error in admitting it into evidence. (*People* v. *Dorado, supra,* at p. 354.)

The judgment is affirmed.

Traynor, C. J., McComb, J., Mosk, J., and Burke, J., concurred.

PETERS, J.—I dissent. The arrest and search here involved were clearly illegal, and violative of defendant's constitutional rights.

Five police officers and a parole officer went to the residence of Rose Juarez, where she was living with her six young children, and where defendant was visiting, to arrest him for a parole violation. So far as the evidence shows, the officers then knew that defendant had a narcotic conviction, was on parole, and that he had missed a Nalline test required as a condition of parole. They also had reason to believe that he was visiting Mrs. Juarez, his former common-law wife. The evidence does not show that they knew or had reason to believe that defendant was presently in possession of narcotics, or had recently associated with known narcotic addicts.

Two officers went to the front door of the Juarez residence, and four to the rear. One of the officers knocked on the front door and he and his companion thereafter entered, admittedly

without making any attempt to comply with section 844 of the Penal Code.[1] One of the officers who had gone to the rear door saw defendant "moving rapidly through the kitchen." Without knocking, and without any attempt to comply with the quoted code section, he opened the door, rushed in, grabbed the defendant, and took him into custody. Thereafter, the officers conducted a thorough search, and after an hour and a half, discovered some heroin as described in the majority opinion.

Both entries, that at the front door, and that at the rear, were illegal. So far as the rear entry is concerned, there is no evidence that the defendant had been in recent possession of narcotics, or that the officers reasonably believed that he had, or was about to destroy any contraband that the officers did not reasonably know that he possessed. Certainly, because a narcotic parolee misses a Nalline test, there is no reasonable cause to believe that he is presently in possession of narcotics, and observing him "moving rapidly through the kitchen" when there is a knock on the front door by someone unknown to him, is not a basis for a reasonable belief that he was about to destroy contraband that the officers had no reason to believe he possessed. The conclusion by the majority that this evidence justified noncompliance with section 844, *supra*, finds no support in the evidence.

It is true that literal compliance with the provisions of that section has not always been required. However, until the opinion today, to justify noncompliance, the officers must reasonably believe that to comply with the section would endanger their personal safety, would possibly permit the defendant to escape, or that defendant might destroy or secrete contraband that the officers reasonably believed he possessed. That is as far as cases such as *People* v. *Maddox,* 46 Cal.2d 301 [294 P.2d 6], go. In the instant case none of the six officers was in peril. There was no danger that the defendant might escape. Police officers, in force, were at both the front and rear exits of the building. There could not have been a reasonable belief that defendant was about to destroy or secrete evidence, because the officers had no reasonable basis for a belief that he was in possession of contraband. It is only by the wildest surmise or conjecture that it can be inferred

---

[1] That section requires that: "To make an arrest, . . . a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

that a narcotic parole violator seen to move rapidly through the kitchen of a house he is visiting is about to harm the police, is about to escape, or is about to destroy evidence which the officers had no reason to believe that he possessed. To hold that the forcible entry through the rear door here involved without compliance with the code section was valid, is simply to write the section out of the code. This, I submit, is not a proper judicial function.

The entry through the front door was equally, if not more, illegal. Most of the evidence seems to indicate that both the front and rear doors were entered simultaneously without giving the warnings required by the section to legalize the entry. If this is so, the front door entry was clearly illegal, because the officers there neither saw nor heard anything. There is some evidence that when the officers broke into the house through the rear entrance, one of the officers unlocked the front door and admitted the officers standing there. Obviously, if the officers who entered from the rear entered illegally, as they did, they could not legalize the front entry by simply opening the front door. The violation of section 844 is clear and obvious, and cannot be condoned. The police conduct here is precisely the kind of improper police conduct that that section, and the exclusionary rule, were intended to prevent.

It must be remembered that the Juarez residence was not defendant's home. The prosecution offered no evidence to refute the corroborated testimony of defendant that he actually lived three blocks away, and that defendant visited the Juarez residence almost daily to see his children. Under these circumstances defendant indisputably has the right validly to assert that the constitutional rights of Mrs. Juarez were violated.[2]

The prosecution lays much stress on the claimed consent to the search by Mrs. Juarez. There is grave doubt that a consent given under the circumstances here, even if the entry were legal, which it was not, can be deemed to have been voluntary (*People* v. *Michael*, 45 Cal.2d 751, 754 [290 P.2d 852]). Be that as it may, it is settled that a consent given immediately after an illegal entry is not a valid consent. It is tarnished with the same illegality as the illegal entry. (*People* v. *Haven*, 59 Cal.2d 713 [31 Cal.Rptr. 47, 381 P.2d 927].)

The fact that defendant was a parole violator does not alter

---

[2]*People* v. *Martin*, 45 Cal.2d 755 [290 P.2d 855], holds that a defendant as a visitor has the legal standing to assert that the constitutional rights of his host were violated.

the result. Whatever disabilities he may be subjected to because of his parole status (see *People* v. *Denne,* 141 Cal.App. 2d 499 [297 P.2d 451]; *People* v. *Contreras,* 154 Cal.App.2d 321 [315 P.2d 916]; *People* v. *Hernandez,* 229 Cal.App.2d 143 [40 Cal.Rptr. 100]) the point is that the police obtained the evidence by violating the constitutional rights of Mrs. Juarez, and, therefore, of defendant. As was said in *People* v. *Martin,* 45 Cal.2d 755, 761 [290 P.2d 855], the right to object to the use of illegally secured evidence rests "not on a violation of his . . . [defendant's] own constitutional rights, but on the ground that the government must not be allowed to profit by its own wrong and thus encouraged in the lawless enforcement of the law.

"Since all of the reasons that compelled us to adopt the exclusionary rule are applicable whenever evidence is obtained in violation of constitutional guarantees, such evidence is inadmissible whether or not it was obtained in violation of the particular defendant's constitutional rights."

The arrest and search were clearly illegal. For that reason I would reverse the judgment.

Peek, J., concurred.