[Crim. No. 13335.   Second Dist., Div. One.   Dec. 26, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. DONALD
LEROY WOLFE, Defendant and Appellant.

Joseph C. Battaglia, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, and Arthur C. de Goede, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was charged with burglarizing the residence of Richard Terrell (§ 459, Pen. Code); the trial court found him guilty of burglary, second degree. He appeals from the judgment.

Defendant is a brother-in-law of Raymond Terrell; he worked for Raymond's brother, Richard, and had been in Richard's home. While the Richard Terrells were on vacation in July 1966, their home was entered from the rear window by breaking the window screen and screen lock, and a rifle stored in the front closet was stolen. Upon their return on July 16, 1966, Mrs. Richard Terrell received information from Raymond that defendant had taken Raymond's credit cards from a table in his house and had used the Bank of America card to buy property worth $200, he was certain that defendant had taken the rifle, and she should call the sheriff's office.

Richard Terrell talked to Sergeant Fletcher, Norwalk sheriff's office, and based on defendant's past background and the fact that Raymond had told him that about the same time as the theft of the rifle defendant had stolen a number of his credit cards, told Sergeant Fletcher he thought defendant had burglarized his home and stolen a rifle. Sergeant Fletcher testified that he believed Richard told him that defendant was on either parole or probation. Later the same day Raymond

called Sergeant Fletcher and said he believed defendant had stolen a number of credit cards from his home; he had received a call from the proprietor of a dress shop advising him that someone used his credit cards there and at a men's shop next door for merchandise in a sum in excess of $50 and left in a 1955 gray Buick, license No. JOC 035, and from the description given he felt that it was defendant. Then Sergeant Fletcher received a third call from Officer Smyth of Lynwood who said that he had been apprised by Raymond of the events at the dress shop and men's wear store; he was conducting an investigation of defendant and knew defendant was in and out of the apartment of his girl friend, Alma Dwyer, at 3333 Carlin Street, Lynwood, and was staying with her ''on and off,'' and knew from the manager of the apartment house at that address that on the previous evening he had seen Alma take a rifle into the apartment; and he would stake out the Carlin Street address. Later Officer Smyth again called Sergeant Fletcher telling him that defendant had arrived at the apartment driving a gray 1955 Buick, license No. JOC 035. At that time Sergeant Fletcher requested Officer Smyth to take defendant into custody.

About 10:30 p.m. Officer Smyth and another Lynwood police officer in uniform knocked on the door of Mrs. Dwyer's apartment; she opened the door and the officers went in, directed their flashlight on defendant who was in the hallway leading to the bedroom, arrested him, put their guns on him and searched him. They started to search the apartment and Mrs. Dwyer showed Officer Smyth the rifle in the closet and freely and voluntarily gave it to him. Mrs. Dwyer testified she would not have given them the gun had they not ''barged'' into the house. Defendant testified that he asked Officer Smyth what the ''probable cause'' for coming into the apartment was, and the officer replied that he had been told a dark-haired girl fitting Alma's description was seen bringing the gun into the apartment; that the officer suggested that Mrs. Dwyer call someone to watch the children in case she was taken into custody; and that he asked the officer whether she would be taken to jail if he told them what they wanted to know, and Officer Smyth replied that it would be up to the Norwalk sheriff.

Sergeant Fletcher received a call from officer Smyth advising him that defendant was in custody and that he had recovered a rifle similar to that reported in Richard Terrell's burglary. Sergeant Fletcher relayed to Deputies Omohundro

and Galindo the address of the apartment and the information received by him from the two Mr. Terrells and Officer Smyth, and told them to go to the address where the Lynwood officers had defendant in custody. Deputy Omohundro was met by Officers Smyth and Jessinghaus who said they had arrested defendant for suspicion of burglary and recovered the stolen rifle which had been brought from a closet by a woman in the apartment and the stolen credit cards from defendant's pants pocket. The rifle was lying on a counter in the apartment. Deputy Omohundro asked defendant to step outside where he identified himself and his partner, told him he was being placed under arrest for burglary and advised him of all of his constitutional rights.[1] Asked if he understood these rights defendant said that he did. Then defendant asked whether Mrs. Dwyer would be taken to jail if he told them what they wanted to know; Deputy Omohundro replied that it would depend upon what was told them. Defendant stated freely and voluntarily, without promises or threats to induce him to make a statement, that he had taken the rifle and the credit cards; he and another person had entered the house of Richard Terrell in the early evening of July 15 through a rear window and taken the rifle; he needed money and he had taken the rifle with the intent to commit a robbery and then return the rifle to its proper place in Terrell's home before the burglary was discovered; he was just borrowing the rifle and intended to return it. Defendant testified only on the issue of the voluntariness of his statements; he said that he made them to the police in the hope that Mrs. Dwyer would not be jailed, and otherwise he would not have made those statements.

Defendant neither offered a defense nor testified on his own behalf.

Appellant's contention that he entered the Terrell home "merely to borrow" the rifle, not permanently to deprive the owner of it, and that there must be a showing that when he entered Richard Terrell's residence he intended to perpetrate a felony within the premises and there is no proof of such intent because the felony he intended to commit was a robbery to be perpetrated later elsewhere not in Terrell's home, is pred-

---

[1] The deputy sheriff advised defendant that he had a right to call an attorney and to have an attorney with him whenever an officer questioned him regarding the incident, if he did not have funds to secure an attorney one would be supplied him, he did not have to speak to them and could remain silent and anything he might say could possibly be used against him later in court.

icated on his extrajudicial statement to Deputy Omohundro that he intended only to borrow the weapon for the purpose of using it later to commit a robbery and return it upon completion of the intended crime before the absence of the weapon was discovered by the Terrells.

■ For a burglary conviction the prosecution must prove that the entry was made "with intent to commit grand or petit larceny or any felony" (§ 459, Pen. Code), but the intent to commit larceny means the intent to deprive the owner of his property permanently. (*People* v. *Garrow,* 130 Cal.App.2d 75, 83-84 [278 P.2d 475].) Direct evidence of specific intent is seldom available in burglary prosecutions and the proof is almost entirely circumstantial. (*People* v. *Henderson,* 138 Cal.App.2d 505, 509 [292 P.2d 267].) ■ While burglarious intent can reasonably be inferred from an unlawful entry alone (*People* v. *Jordan,* 204 Cal.App.2d 782, 786 [22 Cal.Rptr. 731]), the circumstances attest defendant's intent to steal the rifle. The breaking of the rear window screen and screen lock of the Terrell home and entry therein at a time when the occupants were absent, together with defendant's subsequent possession of the rifle taken from the home without the Terrells' permission and credit cards stolen from another person's residence and used by defendant to purchase property in the owner's name, are circumstances supporting the necessary implied finding that when defendant entered the Terrells' residence he did so with the intent to commit theft therein—steal the rifle. As to why defendant took the rifle, he told Deputy Omohundro in an unsworn extrajudicial statement that he intended only to borrow it so he could perpetrate a robbery and return it after committing the crime. In the light of all the circumstances, this explanation lacks credibility. It seems more likely, in his admittedly reduced financial circumstances, that defendant took the rifle to pawn or sell, rather than for the purpose of a robbery, considering that it is a crime in which a concealed weapon is most often used. Appellant's suggestion that he was an employee and a "relative" of Richard Terrell and had previously been in his home, does not make the "theft" theory less tenable than the "borrow" theory. First, such an argument goes to the weight of the evidence, a matter in the exclusive province of the trial judge; and second, defendant was a closer "relative" of Raymond Terrell, in fact, the brother of Raymond's wife, and he stole from Raymond's

home, too—various credit cards which he then used in Raymond's name to buy merchandise.

■ While the trial judge commented, "Well, even if we assume that the defendant's story was true as it very well could have been, he was going to use it and attempt to return it. I feel that a crime was committed," it is apparent from the statement itself that he did not commit himself to acceptance of the truth of defendant's extrajudicial statement; thus, this court may properly presume that he found all of the facts necessary to support the conviction. Moreover, to the extent that the judge entertained an erroneous opinion as to the law, and so expressed himself, it is a matter immaterial to this appeal. (*People* v. *Grana,* 1 Cal.2d 565, 570-571 [36 P.2d 375]; *People* v. *Blocker,* 197 Cal.App.2d 420, 428-429 [17 Cal. Rptr. 247].) Even assuming defendant's explanation to be true, it does not follow that Richard Terrell would not have been permanently deprived of his rifle. Its wrongful use in the perpetration of a crime would undoubtedly place the rifle beyond defendant's ability to return it and create an unreasonable risk of permanent loss of the weapon. If defendant was successful in the commission of the robbery, in the light of his background and the theft and use of Raymond's credit cards, it is likely he would continue to use the rifle in further criminal activity and not bother to return it—or if he did try to return the weapon, he would be compelled to do so surreptitiously, for to return it openly would link him in any crime in which the weapon was used; and if defendant was unsuccessful in committing the robbery, the rifle in all probability would also find its way into police custody. More reasonable is the view that having engaged in criminal activity with the rifle defendant would neither be able to return the rifle nor bother to do so.

Finally, appellant claims that the unexcused compliance with the requirements of section 844, Penal Code, in effecting his arrest and the lack of probable cause to believe that he had committed a felony, render the subsequent search and seizure unlawful.

■ The arrest predicated on reasonable cause to believe that defendant had committed not one, but two felonies— burglary of Richard's house and theft of Raymond's credit cards—was lawful. (*People* v. *Hillery,* 65 Cal.2d 795, 803 [56 Cal.Rptr. 280, 423 P.2d 208]; *People* v. *Cockrell,* 63 Cal.2d 659, 665 [47 Cal.Rptr. 788, 408 P.2d 116]; *People* v. *Stewart,* 62 Cal.2d 571, 577-578 [43 Cal.Rptr. 201, 400 P.2d 97]; *Peo-*

*ple* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].) ■ "The question of probable cause to justify an arrest without a warrant must be tested by the facts which the record shows were known to the officers at the time the arrest was made." (*People* v. *Talley,* 65 Cal.2d 830, 835 [56 Cal.Rptr. 492, 423 P.2d 564]; *People* v. *Lara,* 67 Cal.2d 365, 373 [62 Cal.Rptr. 586, 432 P.2d 202].) ■ Hearing the evidence the trial judge found that the officers had such cause; the proof is sufficient to support his conclusion. (*People* v. *Talley,* 65 Cal.2d 830, 837 [56 Cal.Rptr. 492, 423 P.2d 564].) When the officers went to the apartment, they knew that a rifle had been taken without the consent of Richard Terrell by forced entry to his residence in which defendant, who was his employee, had been on prior visits; that Richard and Raymond Terrell believed defendant had taken the rifle because around the same time defendant took from Raymond's house without his consent various credit cards and used the same to make purchases in several shops which defendant left in his gray 1955 Buick, license No. JOC 035; and that the night before, the Dwyer girl, with whom and in whose apartment defendant stayed "on and off," had taken a rifle into the premises. In addition, they had observed defendant's arrival in the gray 1955 Buick and knew that he was in the apartment. At the time they knocked on the door, the same was opened by Mrs. Dwyer and the officers entered, they had reasonable cause to believe that defendant had committed two felonies. ■ The search of the apartment and seizure of the rifle were clearly incident to defendant's arrest and hence not "unreasonable" within the meaning of the Fourth Amendment. (*People* v. *Webb,* 66 Cal.2d 107, 112 [56 Cal. Rptr. 902, 424 P.2d 342].) The search was limited to the premises where the arrest was made and was contemporaneous with the arrest; it also had a definite object, the seizure of the stolen rifle, and was reasonable in scope. (*People* v. *Cruz,* 61 Cal.2d 861, 866 [40 Cal.Rptr. 841, 395 P.2d 889].)

■ Compliance with the requirements of section 844, Penal Code,[2] is excused if the facts known to the officers before their entry were sufficient to support their good faith belief that compliance would have increased their peril or

[2]Section 844, Penal Code, provides: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace-officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

frustrated the arrest. (*People* v. *Maddox,* 46 Cal.2d 301, 305-307 [294 P.2d 6] ; *People* v. *Carrillo,* 64 Cal.2d 387, 391 [50 Cal.Rptr. 185, 412 P.2d 377].) ▮ Just prior to their entry to the Dwyer apartment without permission, the officers knew that defendant, who had a bad background and who had stolen several credit cards and used them to buy merchandise, was in the premises, and had reason to believe that the stolen rifle was also in the apartment. This was sufficient to entitle them to conclude that if they waited for permission to cross the threshold after announcing their purpose and identifying themselves, defendant would use the rifle. In *People* v. *Hammond,* 54 Cal.2d 846 [9 Cal.Rptr. 233, 357 P.2d 289], the officers at the time of entry had reasonable cause to believe that defendant was engaged in the commission of a felony, had a gun and was under the influence of heroin. Said the court at page 854: ''With this information at hand, in good faith they were entitled to conclude that if they informed the defendant of their presence and demanded admission before breaking into the premises, he might attempt to dispose of the narcotics then in his possession, *or might attempt to obtain and use his gun.* Under these circumstances, noncompliance with the requirements of section 844 does not compel the exclusion of evidence seized in the ensuing search. (*People* v. *Shelton, supra,* 151 Cal.App.2d 587, 588 [311 P.2d 589].)'' (Italics added.)

Appellant relies on *People* v. *Arellano,* 239 Cal.App.2d 389 [48 Cal.Rptr. 686], in which a parole violator was known to be in a hotel room with his girl friend. The officers broke into the premises without complying with the requirements of section 844 and found narcotics on a nightstand. The court held that failure of compliance was not excused and, compounded by the invasion of privacy suffered by the girl friend, ruled the contraband to be inadmissible. However, in *Arellano* there was nothing before the officers to indicate that compliance with section 844 would have increased their peril or frustrated the arrest. The invasion of privacy of the girl friend appears to have been but an incidental fact which the court felt compounded the already existing error of unexcused compliance with section 844. In the case at bar, for the officers to have first identified themselves, explained their purpose and demanded admittance to Mrs. Dwyer's apartment before entering, would have accomplished no more than give defendant an opportunity to secure the rifle and resist arrest at the peril of the officers. As to Mrs. Dwyer's privacy, to the officers

at the time of entry, she was not by any means the wholly innocent bystander. Having been seen taking the rifle, believed to have been stolen, into her apartment, Mrs. Dwyer, who was in a position to know defendant's questionable character (*People* v. *Stollmack,* 18 Cal.App.2d 471, 474 [64 P.2d 162]), was suspect as one who had received, concealed or withheld stolen property or as an accessory to a burglary or theft. (See *People* v. *Littlejohn,* 148 Cal.App.2d 786, 790 [307 P.2d 425].)

When there is reasonable cause to make an arrest, and the facts known to the arresting officers before crossing the threshold are not inconsistent with the good faith belief on their part that compliance with the formal requirements of section 844, Penal Code, is excused, a failure to comply therewith does not invalidate the search and seizure made as incident to the ensuing arrest. The evidence in this case brings it within the foregoing rule.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.