Filed 10/30/24  P. v. Centenomiranda CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JULIO IGNACIO CENTENOMIRANDA,<br><br>    Defendant and Appellant. | G062723<br><br>(Super. Ct. No. 19WF1563)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Jonathan S. Fish, Judge. Affirmed.

Christine M. Aros, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Julio Ignacio Centenomiranda was sentenced to 20 years to life in prison for sexually assaulting and inflicting great bodily injury on an elderly woman during a burglary. On appeal, he contends: 1) There is insufficient evidence he harbored felonious intent in entering the victim's house or that he inflicted the injuries she sustained; and 2) the trial court erred in denying his request for a mistrial based on the prosecutor's alleged misconduct during closing argument. Finding no merit to these contentions, we affirm the judgment.

## STATEMENT OF FACTS

In 2019, K.L. was living with her family and 87-year-old grandmother C.L. in a rear dwelling unit that is attached to her parent's home in Garden Grove. The unit has a private entrance that is accessible only by walking through a side gate and traversing a pathway on the side of the house.

Having suffered a stroke that left her partially paralyzed, C.L. could not speak or walk at the time this case arose. She slept in a medical bed that had a safety railing, and if she had to use the bathroom or wanted to move about the house, someone would have to lift her out of bed and put her into her wheelchair.

On the night of June 27, 2019, K.L. put C.L. to bed and went to sleep around 10:00 p.m. However, a few hours later, K.L. heard C.L. making noise, so she got up to check on her. K.L. discovered C.L. in her wheelchair in the kitchen with defendant. Having removed C.L.'s pants, defendant was kneeling in front of her with his pants downs and his head in her pelvis area. K.L. screamed for her husband, and together they grabbed defendant and wrestled him outside. Defendant fought back and struggled to get away, but K.L. and her family managed to subdue him until the police arrived.

2

By that time, defendant was no longer struggling. In fact, he appeared rather sleepy and was having trouble walking on his own. At the scene, the police found his backpack, which contained some empty beer cans and an open package of condoms. They also discovered that defendant lived in an apartment duplex about three quarters of a mile away from C.L.'s dwelling.

Because defendant appeared to be intoxicated, the police took him to the hospital to be evaluated. His blood alcohol level several hours later, at 10:30 a.m., was .056 percent. Subsequent investigation revealed the presence of C.L.'s DNA on defendant's penis. And defendant's DNA, along with saliva enzymes, were found on C.L.'s vagina.

Following the incident, C.L. was taken to the hospital emergency room with bruising and trauma on the left side of her face and head, as well as bruising on her left arm. A CT scan revealed she also had a brain bleed that was attributable to the head trauma she sustained during her encounter with defendant.

At trial, defendant faced two charges: 1) Assault with the intent to commit a sexual offense during the commission of first degree burglary, and 2) forcible oral copulation. (Pen. Code, §§ 220, subd. (b), 287, subd. (c)(2)(A).) As to both counts, it was further alleged that defendant inflicted great bodily injury. (Pen. Code, § 12022.8.) In addition, the prosecution alleged that defendant orally copulated C.L. during a burglary, for purposes of the One Strike law. (Pen. Code, § 667.61, subds. (b), (c)(7), (d)(4), (e)(2).)

In closing argument, defense counsel did not dispute the oral copulation charge or the great bodily injury allegation. However, he argued defendant was so drunk that he wandered into C.L.'s house by mistake—thinking it was his own house—and therefore he did not have felonious intent

3

at the time of entry, so as to support the burglary-related charges. The jury rejected that argument and convicted defendant as charged.

## DISCUSSION

### I.

#### SUFFICIENCY OF THE EVIDENCE

Defendant contends there is insufficient evidence to support the jury's determination that he entered C.L.'s home with felonious intent or that he inflicted great bodily injury on her. We disagree.

*A. Standard of Review*

The standard of review for assessing the sufficiency of the evidence to support a criminal conviction is "highly deferential." (*People v. Lochtefeld* (2000) 77 Cal.App.4th 533, 538.) Our task is to "review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.]" (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

In so doing, we do not reweigh the evidence or reevaluate the credibility of the trial witnesses; rather, "[w]e presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.]" (*People v. Lindberg, supra*, 45 Cal.4th at p. 27.) "The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [it]."' [Citation.]" (*People v. Cravens* (2012) 53 Cal.4th 500, 508.)

The same standard applies when reviewing the sufficiency of the evidence to support a jury's true finding on an enhancement allegation. (*People v. Albillar* (2010) 51 Cal.4th 47, 59–60; *People v. Carrasco* (2006) 137 Cal.App.4th 1050, 1058.)

*B. Felonious Intent*

In order to prove the assault charge and the One Strike allegation, the prosecution had to demonstrate defendant committed the crime of burglary, which required proof he entered C.L.'s home with the intent to commit larceny, rape or oral copulation. (Pen. Code, § 459; *People v. Holt* (1997) 15 Cal.4th 619, 669; CALCRIM Nos. 890, 3180, 1700.) Defendant claims there is insufficient evidence he possessed such intent. Relying on the fact he was intoxicated, he did not have any gloves or burglary tools in his possession, and there were no signs of forced entry into C.L.'s home, he claims "the evidence suggested [he] simply walked through the unlocked door [to C.L.'s home] while drunk" and committed a "crime of opportunity" once he was inside.

However, the record shows defendant entered C.L.'s house at 1:30 in the morning with an open box of condoms in his possession. Although he had been drinking and lived within a mile of C.L.'s house, he lived in an apartment duplex, not an attached rear dwelling like C.L.'s, which is only accessible through a side gate and walkway. So, it is hard to imagine he actually mistook C.L.'s residence for his own.

Moreover, once he got inside C.L.'s home, he did not stumble around aimlessly making noise and causing a commotion, as drunk people are wont to do. Instead, he lifted C.L. from her bed to her wheelchair, wheeled her into the kitchen, and proceeded to sexually assault her. The fact defendant committed a sex offense upon entering the residence is compelling

5

proof that is what he intended to do at the time of entry. (Cf. *People v. Abilez* (2007) 41 Cal.4th 472, 508 ["'There is no better proof that (the defendant) entered the (victim's house) with intent to commit robbery than a showing he did in fact commit robbery after his entry.' [Citation.]"].) Defendant also tried to flee the scene upon being confronted by K.L. and her husband, which is evidence of a guilty mind. (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1027.)

Although there is no direct evidence as to what defendant was thinking when he entered C.L.'s home, felonious intent "'may be, and usually must be, inferred from circumstantial evidence.' [Citation.]" (*People v. Davis* (2009) 46 Cal.4th 539, 606; accord, *People v. Wolfe* (1967) 257 Cal.App.2d 420, 425.) We find the circumstantial evidence in this case is sufficient to support the jury's finding that defendant intended to commit a sexual offense upon entering C.L.'s residence. We are powerless to disturb that finding.

## C. *Great Bodily Injury*

Defendant does not dispute C.L. sustained great bodily injury during the course of his crimes. However, he argues there is insufficient evidence to support the jury's finding that he is the one who inflicted those injuries. In so arguing, defendant notes K.L. told the police and testified at trial that there was so much commotion going on at the time she confronted defendant in her kitchen, she was unsure whether she or her husband may have inadvertently injured C.L. while they were struggling to subdue defendant.

But K.L. testified she had no actual memory of hitting or bumping into C.L. during the struggle. She also testified the struggle took place near the right side of C.L.'s body. This is significant because all of C.L.'s injuries were on the left side of her body. On the whole, K.L.'s testimony

6

simply does not support defendant's theory that C.L.'s injuries were caused by K.L. or her husband.

Defendant also speculates C.L.'s injuries may have been related to the treatment she received at the hospital. However, while C.L.'s treating physician testified it was conceivable that her arm bruising resulted from the IV line and the blood pressure testing she received at the hospital, he did not think that was likely. Instead, he surmised her bruises, as well as her brain bleed, were attributable to some other form of trauma she received.

Thus, it is hardly surprising that defense counsel made no attempt to contest the great bodily injury allegation at trial. Considering the evidence in the light most favorable to judgment below—as we are required to do—there is ample evidence to support the jury's determination that defendant personally inflicted great bodily injury on C.L. during the commission of his crimes.

## II.

### PROSECUTORIAL MISCONDUCT

Defendant argues the trial court abused its discretion in denying his request for a mistrial based on the prosecutor's closing argument. Again, we cannot agree.

#### A. *Background*

During her rebuttal argument, the prosecutor assailed defense counsel's claim that defendant may have entered C.L.'s home by mistake, thinking it was his own residence. The prosecutor submitted that not only did the two homes look nothing alike, but defendant did not act like he had made a mistake after entering C.L.'s home. To drive home the latter point, the prosecutor noted that after being caught by K.L. and her husband inside their kitchen, defendant did not ask them what they were doing in his house.

That prompted an immediate objection from defense counsel. During a sidebar conference, he contended the prosecutor's argument undermined defendant's constitutional right against self-incrimination. Defense counsel further pointed out that the prosecutor had successfully opposed his attempt to admit statements from defendant indicating he was drunk and confused when the police arrested him at the scene, statements that arguable would have supported his mistake of fact defense. Given the prosecutor's efforts to prevent the jury from hearing about what defendant did say at the scene, defense counsel argued it was unfair for her to invite the jury to draw an adverse inference from what defendant did not say at the scene. Defense counsel also asked for a mistrial, claiming "[t]here's no way to unring this bell[.]"

The trial court was not sympathetic to defense counsel's constitutional argument, since the prosecutor was not commenting on defendant's postarrest silence or his failure to testify at trial. (See generally *Doyle v. Ohio* (1976) 426 U.S. 610 & *Griffin v. California* (1965) 380 U.S. 609, which generally prohibit the prosecution from using the defendant's postarrest silence against him.) But the trial court did believe the prosecutor's argument was "misleading" and "improper" in light of her successful opposition to the admission of defendant's exculpatory statements. **(**See *People v. Varona* (1983) 143 Cal.App.3d 566, 570 [prosecutor improperly argued there was a lack of evidence on an issue that he had successfully prevented the defense from establishing at trial].)

Nevertheless, the trial court did not believe the misconduct rose to the level to justify a mistrial because "defendant would still be able to seek a fair trial." To ensure that was the case, the court informed the jury it was sustaining defense counsel's objection to the prosecutor's argument about

8

what defendant did not say when he was caught inside C.L.'s house. Additionally, the court told the jurors, "you are not to consider [that argument] in any way" and that the arguments of counsel are not evidence.

*B. Applicable Law*

"A prosecutor's misconduct violates the Fourteenth Amendment to the federal Constitution when it 'infects the trial with such unfairness as to make the conviction a denial of due process.' [Citations.] In other words, the misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.' [Citation.] A prosecutor's misconduct 'that does not render a criminal trial fundamentally unfair' violates California law 'only if it involves "'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.'"' [Citations.]" (*People v. Harrison* (2005) 35 Cal.4th 208, 242.)

Outside of these limitations, prosecutors have considerable latitude to comment on and argue reasonable inferences from the evidence. (*People v. Woods* (2006) 146 Cal.App.4th 106, 112–113.) Although the prosecutor may not imply the defendant has a duty or burden to produce evidence or to prove his or her innocence, "[c]omments on the state of the evidence or on the defense's failure to call logical witnesses, introduce material evidence, or rebut the People's case are generally permissible. [Citation.]" (*Ibid.*)

Moreover, when prosecutorial misconduct does occur, a mistrial should only be granted when the defendant's chances of receiving a fair trial have been irretrievably damaged. (*People v. Ayala* (2000) 23 Cal.4th 225, 282; *Carrillo v. Superior Court* (2006) 145 Cal.App.4th 1511, 1523.) "'Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on

9

mistrial motions. [Citation.]' [Citation.]" (*People v. Wallace* (2008) 44 Cal.4th 1032, 1068.) Reversal is not required "'unless the trial court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.'" (*People v. Dunn* (2012) 205 Cal.App.4th 1086, 1094, quoting *People v. Guerra* (2006) 37 Cal.4th 1067, 1113, overruled on other grounds in *People v. Rundle* (2008) 43 Cal.4th 76, 151.)

## C. Analysis

No such abuse of discretion occurred in this case. Although, as respondent concedes, the prosecutor's argument about what defendant did not say when confronted at the scene was "inartful" and perhaps "questionable", the trial court ordered the jury to disregard it. The court also told the jurors that the attorneys' arguments are not evidence. There is nothing in the record to suggest the jurors ignored these direct instructions. (See *People v. Stitely* (2005) 35 Cal.4th 514, 559 [absent contrary indications, jurors are presumed to have followed their instructions].)

Furthermore, the nature of the alleged misconduct was not such as to mandate a mistrial. The prosecutor was simply trying to point out that defendant did not act like he had entered the wrong house by mistake when he was confronted by its rightful occupants, which is something the evidence bore out and the jury was entitled to consider. While the prosecutor may have overreached somewhat by talking about what defendant did not say when he was confronted, her brief remarks on that topic were not such as to render defendant's trial unfair, particularly given the trial court's prompt remedial actions. Therefore, the trial court did not abuse its discretion in denying defendant's motion for a mistrial.

10

## DISPOSITION

The judgment is affirmed.


DELANEY, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.

11