[No. H009663. Sixth Dist. May 28, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
VINCENT MARQUEZ, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts A, C through G, I and J.

**COUNSEL**

Arthur Dudley, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Martin S.

Kaye and Richard Rochman, Deputy Attorneys General, for Plaintiff and Respondent.

---

## Opinion

**MIHARA, J.**—Defendant was convicted of first degree burglary, and allegations that he had suffered prior serious felony convictions (Pen. Code, § 667) and a prison prior (Pen. Code, § 667.5, subd. (b)) were found true. Defendant was sentenced to 30 years in state prison. On appeal he makes numerous assertions of error including claims that (1) the trial court committed prejudicial error when it failed to instruct sua sponte on the need for corroboration of an extrajudicial identification of defendant and (2) the trial court erred in finding that two prior convictions suffered in Oregon were serious felonies under Penal Code sections 667 and 1192.7, subdivision (c).[1] We find that the trial court had a sua sponte duty to instruct the jury on the need for corroboration of the extrajudicial identification but that the court's failure to do so was harmless error. Because we conclude that the Oregon prior convictions could not support enhancements pursuant to Penal Code section 667, subdivision (a), we vacate those enhancement findings. In all other respects, we affirm the judgment.

### FACTS

At 8 a.m. on July 8, 1991, Alicia Zavala left her house and walked her daughter to the bus stop. Upon her return she saw through the front window that there was a man in her living room. She had never seen this man before. Mrs. Zavala had her next door neighbor call 911 to report the intruder. Deputy Martinez arrived on the scene within minutes. Martinez accompanied Mrs. Zavala to her house and they found that the man had left the house. One of the windows of the house had been broken. Mrs. Zavala looked out that window and saw a man about 40 yards away walking away from the house carrying a stereo. Mrs. Zavala told Martinez that this man was the same man she had seen inside her house. Martinez pursued this man and brought him

---

[1]Defendant also claims that (1) there was insufficient evidence of territorial jurisdiction to support his conviction, (2) the trial court prejudicially erred by failing to instruct the jury sua sponte on the effect to be given circumstantial evidence, (3) the court prejudicially erred in giving an instruction defining the term "willfully," (4) the trial court made prejudicial errors with respect to shoeprint evidence, (5) the court prejudicially erred in failing to instruct on a lesser related offense, (6) the absence of any reflection in the record that the interpreters were sworn requires reversal, (7) the trial court had, and failed to exercise, discretion to impose concurrent sentences for Penal Code section 667, subdivision (a) enhancements and (8) there was insufficient evidence to support the prison prior (Pen. Code, § 667.5, subd. (b)). In the unpublished portion of the opinion, we reject these contentions.

back to Mrs. Zavala's house. This man was defendant. Mrs. Zavala identified defendant as the man she had seen in her house and she identified the stereo he had been carrying as one belonging to her brother-in-law which had been stored in her living room. Martinez found shoeprints next to the house beneath the broken window and by an opening in the fence behind the house which matched the pattern on the bottom of the shoes defendant was wearing.

Defendant was charged by information with first degree burglary (Pen. Code, § 459). It was further alleged that defendant had suffered numerous prior serious felony convictions (Pen. Code, § 667, subd. (a)) and prior felony convictions for which he had served a prison term (Pen. Code, § 667.5, subd. (b)). Defendant waived his right to counsel, entered a not guilty plea and denied the allegations. The priors were bifurcated for trial. He moved *in limine* to exclude Martinez's testimony that the shoeprints found at the scene matched the pattern on the shoes he was wearing when he was arrested. Defendant asserted that only an expert could testify that the pattern on defendant's shoes matched the shoeprints. The motion was denied.

Mrs. Zavala testified that she had asked her neighbor to call the police after she saw a man in the living room of her house When she returned to her house with Martinez and looked through the broken window, she saw the same man walking away. The prosecutor asked Mrs. Zavala "who was walking away?" Mrs. Zavala said "I recognize him. It's this guy here who was in there." However, when the prosecutor asked Mrs. Zavala to point to the person she was identifying, for the record, Mrs. Zavala said that she didn't think she could remember. Nevertheless, she testified that the man walking away was the same man who had been in her house and the same man Martinez arrested and brought back for her to identify. Martinez testified that he pursued and arrested the man who was walking away from Mrs. Zavala's house after Mrs. Zavala identified that man as the man she had seen in her house. Martinez testified that the man who was walking away from Mrs. Zavala's house was defendant. Martinez also testified that the shoeprints he discovered at the scene matched the pattern on the bottom of the shoes defendant was wearing when Martinez arrested him.

Defendant did not testify. The only witness he called was his investigator. Through this witness defendant attempted to attack Mrs. Zavala's identification of him as the burglar. In his closing argument, defendant claimed innocence and challenged the reliability of the identification evidence.

The court instructed the jury that burglary had two elements: "1. A person entered an inhabited dwelling. [¶] 2. At the time of the entry such person had

specific intent to steal and take away someone else's property, and intended to deprive the owner permanently of such property." The court also defined the word "willfully." After the jury began its deliberations, defendant asked the court "[w]hy was the instruction on possession of stolen property not given to the jury?" The court explained that the defense had not requested those instructions so they had not been given. Defendant said: "I just thought, is it too late to give that sort of thing?" The court replied: "Yes, it is too late. The jury is now deliberating and to give the instructions would require reinstructing the jury on all instructions so as not to cause them to focus on a particular instruction." Thereafter, the jury returned with a verdict of guilt.

Defendant waived his right to a jury trial on the priors. After a court trial, the priors were found true.[2] Defendant waived his right to a probation report and requested immediate sentencing. The court imposed the four year mid-term for the burglary and consecutive five year terms for each of five Penal Code section 667, subdivision (a) prior serious felony convictions. A one year term was imposed for a Penal Code section 667.5, subdivision (b) prison prior. Defendant was committed to state prison for a total term of 30 years.

DISCUSSION

A. *Territorial Jurisdiction**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

B. *"Gould"* Instruction

■■■ Defendant claims that Mrs. Zavala's failure to confirm her extrajudicial identification of defendant at trial triggered the trial court's sua sponte duty to instruct the jury on the need for corroboration of the extrajudicial identification. We conclude that the trial court's failure to give such an instruction was harmless error.

■■■ Trial courts must instruct sua sponte on "general principles of law that are closely and openly connected with the facts of the case." (*People* v.

---

[2]The trial court found true allegations that defendant had suffered two prior serious felony convictions in Oregon. However, defendant was given a term of imprisonment for only one of the two Oregon priors. The trial court "stayed" the other Oregon prior. Since trial courts are not empowered to strike or stay Penal Code section 667 enhancements (Pen. Code, § 1385; *People* v. *Eberhardt* (1986) 186 Cal.App.3d 1112, 1121-1123 [231 Cal.Rptr. 387]; *People* v. *Harrell* (1989) 207 Cal.App.3d 1439, 1447 [255 Cal.Rptr. 750]), we consider the propriety of the trial court's findings on both of the Oregon prior convictions in connection with defendant's argument that the Oregon priors were not serious felonies.

*See footnote, *ante,* page 115.

*Marquez* (1992) 1 Cal.4th 553, 581 [3 Cal.Rptr.2d 710, 822 P.2d 418]; *People* v. *Sedeno* (1974) 10 Cal.3d 703, 715 [112 Cal.Rptr. 1, 518 P.2d 913].) "An extrajudicial identification that cannot be confirmed by an identification at the trial is insufficient to sustain a conviction in the absence of other evidence tending to connect the defendant with the crime."[3] (*People* v. *Gould* (1960) 54 Cal.2d 621, 631 [7 Cal.Rptr. 273, 354 P.2d 865].) No court has yet decided what triggers a trial court's duty to instruct the jury on the need for corroboration of an extrajudicial identification which is not confirmed by the witness at trial. (See *People* v. *Armijo* (1990) 221 Cal.App.3d 271, 279-280 [270 Cal.Rptr. 496] [refusal to give *"Gould"* instruction, "if erroneous, was harmless"].) The limitation established in *Gould* with respect to an unconfirmed extrajudicial identification is analogous to the limitation imposed by Penal Code section 1111 with respect to accomplice testimony. "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense . . . ." (Pen. Code, § 1111.)

 Since the corroboration requirement for accomplice testimony is the same as the corrobation requirement for unconfirmed extrajudicial identifications, the trial court's duty to instruct the jury on the need for corroboration of an unconfirmed extrajudicial identification must be the same as its instructional duty regarding the need for corroboration of accomplice testimony. Trial courts have a sua sponte duty to instruct the jury on the need for corroboration of accomplice testimony whenever there is testimony of a witness whom the jury could conclude was an accomplice. (*People* v. *Gordon* (1973) 10 Cal.3d 460, 466 [110 Cal.Rptr. 906, 516 P.2d 298]; *People* v. *Bevins* (1960) 54 Cal.2d 71, 76 [4 Cal.Rptr. 504, 351 P.2d 776]; *People* v. *Warren* (1940) 16 Cal.2d 103, 118-119 [104 P.2d 1024].) Therefore, we hold that a trial court must instruct on the need for corroboration of an extrajudicial identification whenever evidence of a witness's extrajudicial identification of a defendant is admitted at trial and that witness fails to confirm the extrajudicial identification at trial.

 ██ Since evidence of Mrs. Zavala's extrajudicial identification of defendant was admitted at trial and she was unable to confirm that identification by a courtroom identification, the trial court had a sua sponte duty to instruct on the need for corroboration of the unconfirmed

---

[3]In *Gould* the eyewitness made an extrajudicial identification of a photograph of the defendant but was unable to make a courtroom identification of the man she had seen. (*People* v. *Gould, supra*, 54 Cal.2d at pp. 630-631.) The conviction was reversed for insufficiency of the evidence. (*Ibid.*)

extrajudicial identification.[4] However, the instructional omission was harmless. "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const. art. VI, § 13.) The failure to instruct on the need for corroboration is harmless where the record contains substantial corroborative evidence. (*People* v. *Miranda* (1987) 44 Cal.3d 57, 100 [241 Cal.Rptr. 594, 744 P.2d 1127].)

Mrs. Zavala *testified at trial* that the man whom she and Martinez observed through the broken window was the same man she had seen in her living room and Martinez *testified at trial* that this man was defendant. Defendant was seen walking away from Mrs. Zavala's house and was carrying a stereo taken from Mrs. Zavala's house when he was arrested. This trial testimony, like the extrajudicial identification, established that defendant was the man who had entered Mrs. Zavala's home and taken property therefrom. Since this testimony established the same fact established by the extrajudicial identification evidence, the jury could not have credited the extrajudicial identification and discredited this corroborative testimony. Accordingly, the trial court's failure to instruct on the need for corroboration was not prejudicial because it is not reasonably probable that a properly instructed jury would have failed to find the requisite corroboration for Mrs. Zavala's extrajudicial identification. (Cf. *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

C.-G.*

. . . . . . . . . . . . . . . . . . . . . . .

### H. *Oregon Prior Convictions*

 The information alleged and the trial court found that defendant had suffered two prior serious felony convictions in Oregon. Defendant challenges these findings.[11] In determining the truth of an allegation that a defendant has suffered a prior serious felony conviction, the trier of fact may look to the entire record of the prior conviction. (*People* v. *Guerrero*

---

[4]Instructions on the need for corroboration of an unconfirmed extrajudicial identification should be patterned after the instructions on the need for corroboration of accomplice testimony set forth in CALJIC No. 3.11 and CALJIC No. 3.12.

*See footnote, *ante*, page 115.

[11]The trial court "stayed" one of the two Oregon priors. Since trial courts do not have the power to stay a Penal Code section 667 enhancement (see fn. 2, *ante*), defendant properly challenges the propriety of the trial court's findings on both of the Oregon prior convictions.

(1988) 44 Cal.3d 343, 355 [243 Cal.Rptr. 688, 748 P.2d 1150].) ▬ The Oregon statutory definition of first degree burglary does not necessarily support enhancement of defendant's sentence pursuant to Penal Code section 667 because a first degree burglary conviction can be obtained in Oregon without a finding that the perpetrator intended to commit grand larceny, petit larceny or a felony at the time of the entry. (Ore. Rev. Stat. §§ 164.205, 164.215, 164.225 (1991)); Pen. Code, § 459; *People* v. *Reynolds* (1989) 211 Cal.App.3d 382, 388-389, fn. 1 [259 Cal.Rptr. 352].) Since the statutory elements are insufficient to support findings that the offenses were serious felonies, the findings can only be upheld if the records of the prior convictions establish that defendant had at least the specific intent to commit larceny under California law.

Resort to the records of defendant's Oregon convictions does not provide support for the trial court's findings. The Oregon indictments charged that defendant entered the dwellings "with the intent to commit the crime of theft therein . . . ." If the statutory definition of theft under Oregon law were the same as the California statutory definition of theft, the indictments would establish that defendant had been convicted of serious felonies. However, the states' statutory definitions of theft differ. The mens rea of theft under California law is the specific intent to permanently deprive the owner of his or her property. (Pen. Code, § 484; *People* v. *Jaso* (1970) 4 Cal.App.3d 767, 771 [84 Cal.Rptr. 567].) The mens rea of the crime of theft under Oregon law is the intent "to deprive another of property or to appropriate property [of another's] . . . ." (Ore. Rev. Stat. § 164.015 (1991).) This intent element is statutorily defined under Oregon law as *either* the intent to permanently deprive another of property *or* the intent to acquire the property, or deprive the owner of the property, *"for so extended a period or under such circumstances" that the owner loses or the perpetrator acquires the major portion of the economic value or benefit of the property.* (Ore. Rev. Stat. § 164.005, subds. (1), (2) (1991), italics added.)

The intent to acquire, or deprive an owner of, "the major portion of the economic value or benefit" of his or her property is not equivalent to the intent to permanently deprive an owner of his or her property. A person who intends only to *temporarily* deprive an owner of property, albeit while acquiring or depriving the owner of the main *value* of the property, does not intend to *permanently* deprive the owner of the property and therefore does not have the intent to commit theft, as that crime is defined under California law. Since such an intent would constitute "the intent to commit the crime of theft" under Oregon law but not under California law, the records of defendant's Oregon convictions do not establish that those convictions were serious felonies within the meaning of Penal Code section 1192.7, subdivision (c)(18). The trial court's findings on the Penal Code section 667,

subdivision (a) enhancements based on the two Oregon prior convictions must be vacated.

I., J.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

CONCLUSION

The Penal Code section 667 enhancement findings based on defendant's Oregon burglary convictions are vacated for insufficiency of the evidence. The trial court is ordered to modify the abstract of judgment to so reflect, reducing defendant's total prison term to 25 years. In all other respects, the judgment is affirmed.

Premo, Acting P. J., and Elia, J., concurred.

A petition for a rehearing was denied June 24, 1993, and the petitions of both respondent and appellant for review by the Supreme Court were denied August 19, 1993. Mosk, J., was of the opinion that the petitions should be granted.

---

*See footnote, *ante*, page 115.