[No. A091689. First Dist., Div. Four. June 21, 2001.*]

THE PEOPLE, Plaintiff and Respondent, v.
NICHOLAS ROBERT ZANGARI, Defendant and Appellant.

*Review granted October 10, 2001. Opinion directed to be published by the Supreme Court on January 17, 2002.

**COUNSEL**

Colleen M. Rohan, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Catherine A. Rivlin and William Kuimelis, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CHIANTELLI, J.**\*—Appellant pled no contest to felony theft with a prior (count 2) (Pen. Code,[1] § 666). In light of this plea, a commercial burglary (count 1) (§ 460, subd. (b)) was dismissed. Faced with an Oregon "[b]urglary in the [f]irst [d]egree" prior, committed in August of 1994, alleged as a "strike" pursuant to section 1170.12, subdivision (c)(1), appellant waived a jury trial on the Oregon prior.

Appellant's motion to strike the Oregon prior was denied; and at the conclusion of a court trial, the court found the Oregon prior was true and that it constituted a strike under the provisions of section 1170.12. Appellant was sentenced to the mitigated term of 16 months, which was doubled to 32 months based upon the prior strike. Timely notice of appeal was filed on June 27, 2000.

On appeal, appellant contends that the evidence of his Oregon prior conviction does not establish all the elements of a California offense and therefore does not constitute a strike for sentencing purposes. We affirm.

### STATEMENT OF FACTS

Although the facts of the underlying offenses are not at issue, the following is taken from the probation report.

"On September 8, 1999, officers were dispatched to Home Depot on the report of a theft. Upon their arrival, they met with the loss prevention officer. He related that he observed the defendant selecting merchandise from inside the store and proceed[ing] to the returns counter. The defendant returned the merchandise to Home Depot for a cash refund of $41.10. As soon as the defendant obtained the money, he was approached by the loss prevention officer and placed under citizen's arrest. He readily admitted his culpability and stated that he needed the cash for medicine. Further investigation found he was a frequent refunder with no receipt at Home Depot. The defendant was subsequently arrested and transported to the main jail in Redwood City."

---

\*Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]All subsequent statutory references will be to the California Penal Code unless otherwise indicated.

DISCUSSION

## A. Foreign Prior Felonies

■ To qualify as a strike, a conviction in another jurisdiction must include all of the elements of the specified California felony. (See § 1170.12, subd. (b)(2).) The initiative version of the three strikes law uses the same criteria and language as the legislative version. (See *ibid.*; § 667.5, subd. (f).)

In determining whether an out-of-state prior is a serious felony, "the trier of fact may consider the entire record of the proceedings leading to imposition of judgment on the prior conviction to determine whether the offense of which the defendant was previously convicted involved conduct which satisfies all the elements of the comparable California serious felony offense." (*People v. Myers* (1993) 5 Cal.4th 1193, 1195 [22 Cal.Rptr.2d 911, 858 P.2d 301].)

" '[W]hen the record does not disclose any of the facts of the offense actually committed' [*People v. Guerrero* (1988) 44 Cal.3d 343, 352 [243 Cal.Rptr. 688, 748 P.2d 1150]], a presumption arises that the prior conviction was for the least offense punishable [*People v. Rhoden* (1989) 216 Cal.App.3d 1242, 1256-1257 [265 Cal.Rptr. 355]]. However, the record need only contain additional evidence from which the court can reasonably presume that an element of the crime was adjudicated in the prior conviction. (See *People v. Johnson* (1989) 208 Cal.App.3d 19, 24 [256 Cal.Rptr. 16].)" (*People v. Johnson* (1991) 233 Cal.App.3d 1541, 1548 [285 Cal.Rptr. 394].) This rule has been applied in a case in which the prior conviction resulted from a defendant's guilty plea. (See *People v. Rodriguez* (1998) 17 Cal.4th 253, 261-262 [70 Cal.Rptr.2d 334, 949 P.2d 31].)

The same approach applies in determining whether an out-of-state prior is a strike for purposes of the three strikes law. (*People v. Purata* (1996) 42 Cal.App.4th 489, 493 [49 Cal.Rptr.2d 664]; *People v. Mobley* (1999) 72 Cal.App.4th 761, 794-796 [85 Cal.Rptr.2d 474]; §§ 667, subd. (d)(2) & 668.)

## B. Oregon Prior

■ Here, the record of conviction consists only of the Oregon indictment, a petition to enter a plea of guilty, judgment, and an amended judgment and order.

As a factual basis for the plea, appellant accepted the language of the indictment's second count, burglary in the first degree, and stipulated that: "On or about August 26, 1994 in Crook County, Oregon I did unlawfully and knowingly enter and remain in a dwelling located at 281205 Mill Creek Rd., Prineville, Oregon, with the intent to commit the crime of theft therein."

On September 20, 1994, appellant was sentenced to 18 months in the Oregon Department of Corrections with credit for time served and "post prison supervision" for 36 months. Restitution in the amount of $2,205 was ordered to be paid to the victims of the burglary, which amount would be reduced if additional property was recovered. Subsequently, the court ordered by way of amended judgment that the restitution amount be split and paid to two parties.

Although the record does not disclose the facts of the offense or the behavior of appellant in committing the burglary, we may presume that the prior conviction was for the least offense punishable under Oregon law. (*People v. Guerrero, supra,* 44 Cal.3d at p. 355; *People v. Rodriguez, supra,* 17 Cal.4th at pp. 261-262.)

In Oregon, a person commits second degree burglary if "the person enters or remains unlawfully in a building with intent to commit a crime therein." (Or. Rev. Stat. § 164.215, subd. (1).) When the building invaded is a dwelling or when other circumstances not relevant to this appeal are proven, the burglary is a first degree burglary, a class A felony. (*Id.,* § 164.225.)

Under California law, "burglary of an inhabited dwelling house" was classified as a serious felony at the time appellant was convicted of his Oregon prior. (§ 1192.7, former subd. (c)(18) [the language of this subdivision has since been changed to read "any burglary of the first degree"].)

The burglary of an inhabited dwelling house, as a serious felony, qualifies as a strike pursuant to section 1170.12, subdivision (b)(1).

## C. *Mens Rea Element of Theft*

Appellant's Oregon burglary conviction was based on his intent to commit "theft" within a dwelling.

In *People v. Marquez* (1993) 16 Cal.App.4th 115, 123 [20 Cal.Rptr.2d 365], disapproved on other grounds in *People v. Cuevas* (1995) 12 Cal.4th 252, 275, footnote 5 [48 Cal.Rptr.2d 135, 906 P.2d 1290], the court found that the Oregon theft statute defines the intent element of theft as "*either* the

intent to permanently deprive another of property *or* the intent to acquire the property, or deprive the owner of the property, 'for so extended a period or under such circumstances' that the owner loses or the perpetrator acquires the major portion of the economic value or benefit of the property. (Or. Rev. Stat. § 164.005, subds. (1), (2) (1991) . . . .)" (Some italics omitted.)

In Oregon, a person commits theft by taking another's property with the intent to deprive that person of the property or with the intent to appropriate the property. (Or. Rev. Stat. § 164.015.)

To " 'appropriate' " means to: "(a) Exercise control over property of another . . . permanently or for so extended a period or under such circumstances as to acquire the major portion of the economic value or benefit of such property; or [¶] (b) Dispose of the property of another for the benefit of oneself . . . ." (Or. Rev. Stat. § 164.005, subd. (1).)

To " 'deprive' " means to: "(a) Withhold property of another or cause property of another to be withheld from that person permanently or for so extended a period or under such circumstances that the major portion of its economic value or benefit is lost to the person; or [¶] (b) Dispose of the property in such manner or under such circumstances as to render it unlikely that an owner will recover such property." (Or. Rev. Stat. § 164.005, subd. (2).)

"Theft" in California, for purposes of a burglary offense, requires the intent to permanently deprive a person of property. (See *People v. Ortega* (1998) 19 Cal.4th 686, 693 [80 Cal.Rptr.2d 489, 968 P.2d 48] ["[t]heft requires an element—the specific intent to permanently deprive a person of property" (italics omitted)].)

The *Marquez* court concluded that "[t]he intent to acquire, or deprive an owner of, 'the major portion of the economic value or benefit' of his or her property is not equivalent to the intent to permanently deprive an owner of his or her property. A person who intends only to temporarily deprive an owner of property, albeit while acquiring or depriving the owner of the main value of the property, does not intend to permanently deprive the owner of the property and therefore does not have the intent to commit theft, as that crime is defined under California law. Since such an intent would constitute 'the intent to commit the crime of theft' under Oregon law but not under California law, the records of defendant's Oregon convictions do not establish that those convictions were serious felonies within the meaning of Penal Code section 1192.7, subdivision (c)(18)." (*People v. Marquez, supra,* 16 Cal.App.4th at p. 123, italics omitted.)

Dicta in the Supreme Court case *People v. Davis* (1998) 19 Cal.4th 301 [79 Cal.Rptr.2d 295, 965 P.2d 1165],[2] decided after *Marquez*, appears to support respondent's contention that the intent to deprive an owner of the main value of his property is equivalent to the intent to permanently deprive an owner of property.[3]

 Acknowledging that the general rule is that the intent to steal required for conviction of larceny is an intent to deprive the owner permanently of possession, the *Davis* court said, "But the general rule is not inflexible: 'The word "permanently," as used here is not to be taken literally.'" (*People v. Davis, supra,* 19 Cal.4th at p. 307, quoting from Perkins & Boyce, Criminal Law (3d. ed. 1982) Larceny, § 1, p. 327 (hereinafter Perkins).) "Our research discloses three relevant categories of cases holding that the requisite intent to steal may be found even though the defendant's primary purpose in taking the property is not to deprive the owner permanently of possession: i.e., (1) when the defendant intends to 'sell' the property back to its owner, (2) when the defendant intends to claim a reward for 'finding' the property, and (3) when, as here, the defendant intends to return the property to its owner for a 'refund.'" (*Davis,* at p. 307.)

Perkins also states: "It is also necessary to understand that there may be an intent to steal without a fixed purpose to deprive the owner of his property permanently. A wrongful use of a temporary nature is not sufficient for the intent to steal if it does not seriously imperil the owner's substantial rights in the property; but it is otherwise of a wrongful temporary use of a nature which intentionally creates an unreasonable risk of permanent loss to the owner." (Perkins, *supra,* § 1 at p. 328.)

The *Davis* court also noted that "[o]ther categories of cases of temporary taking amounting to larceny have also been recognized. Thus the commentators agree there is an intent to steal when the nature of the property is such that even a temporary taking will deprive the owner of its primary economic

---

[2] The defendant in *Davis* claimed he lacked the intent to steal, because he did not intend to permanently deprive Mervyn's department store of its property. He took a shirt off a store rack, carried it to a cashier and requested a refund for the shirt. The court essentially found that by asking for a refund, the defendant dealt with the shirt as if he were the owner; he therefore created a substantial risk that the taking would be permanent because the refund might be refused and the defendant would have an "incentive to keep the property rather than expose himself to detection by returning it." (*People v. Davis, supra,* 19 Cal.4th at pp. 315-317, 313.)

[3] This issue is pending before the California Supreme Court in *People v. Avery* (2000) 83 Cal.App.4th 997, review granted January 10, 2001, S092426. In *Avery*, the court will consider "whether the intent to take property temporarily, but for so extended a period of time as to deprive the owner of a major portion of its value or enjoyment, satisfies the intent requirement of theft under California law." (See order granting review.)

value, e.g., when the property is dated material or perishable in nature or good for only seasonal use. (E.g., Perkins, *supra,* at p. 327 [taking cut flowers from a florist without consent, with intent to return them in a week]; Model Pen. Code & Commentaries, com. 6 to § 223.2, p. 175 [taking a neighbor's lawn mower without consent for the summer, with intent to return it in the fall].) Another such category is composed of cases in which the defendant takes property with intent to use it temporarily and then to abandon it in circumstances making it unlikely the owner will recover it. (E.g., *State* v. *Davis* (1875) 38 N.J.L. 176, 178 [horse and carriage abandoned on a public road 'after many miles and hours of reckless driving']; *State* v. *Ward* (1886) 19 Nev. 297 [10 P. 133, 135-136] [two horses abandoned on open road miles from ranch where taken]; *State* v. *Langis* (1968) 251 Or. 130 [444 P.2d 959, 960] [automobile taken with intent to leave it in city seventy miles away].)" (*People v. Davis, supra,* 19 Cal.4th at pp. 307-308, fn. 4, italics omitted.)

The *Davis* court did not decide whether an intent to deprive an owner of the main value of his property was the equivalent of the intent to permanently deprive an owner of property. In dicta the court said that it "need not determine whether the [*Marquez* holding] is a correct statement of California law. For now it is enough to observe that [*People v.*] *Marquez, supra,* 16 Cal.App.4th at page 123, is distinguishable on its facts . . . ." (*People v. Davis, supra,* 19 Cal.4th at p. 318, fn. omitted.) The court did state, however, that it "found no California case in which the defendant had the intent hypothesized by the court in *Marquez, supra,* 16 Cal.App.4th at page 123. As noted . . . , commentators appear to believe such an intent constitutes an intent to steal at common law. If and when such a case arises in California it will be time enough to determine whether that rule is in fact part of the common law of larceny of which Penal Code section 484 is declaratory." (*Id.* at p. 318, fn. 15.)

Our Supreme Court has long recognized that the California statute defining larceny as a common law crime requires that it be interpreted by application of common law principles.[4]

In *People v. Brown* (1894) 105 Cal. 66, 69 [38 P. 518], the California Supreme Court clarified the law that the intent to steal required for conviction of larceny is an intent to deprive the owner permanently of possession of property. Although the charged offense was burglary, the issue was

---

[4]"[Penal Code section 484, subdivision (a)] is declaratory of the common law." (*People v. Davis, supra,* 19 Cal.4th at p. 304, fn. 1.)

whether the youthful defendant's intent to take a bicycle " 'to get even' " for being teased and return it the following day constituted theft. (*Id.* at pp. 67-68.) The court said that the intent to temporarily deprive would not satisfy the mens rea of theft, but in citing *State v. Davis, supra,* 38 N.J.L. 176, suggests that the intent to take property and abandon it under circumstances where the owner is unlikely to recover it might be sufficient to constitute intent to permanently deprive. (*Brown,* at p. 69.)

■ In *People v. Smith* (1896) 112 Cal. 333, 339 [44 P. 663], the Supreme Court stated that, "[t]o make the stealing of [a cow] grand larceny, the animal must be a live one and not a dead carcass. It is true, if one should kill one of the animals for the purpose of stealing it, and then take and carry away the whole *or a part of the body*, it would be grand larceny." (Italics added.)[5]

■ *People v. Wolfe* (1967) 257 Cal.App.2d 420 [64 Cal.Rptr. 855] is also instructive on this issue. It articulates the reasons why a wrongful intent to do less than permanently deprive a person of his property may still constitute theft by larceny. In *Wolfe* the defendant was prosecuted for burglary which under the circumstances supported the findings of an entry with intent to commit theft. It was proven that the defendant broke a rear window screen and screen lock of the owner's home during the latter's absence and took possession of a rifle. (*Id.* at p. 422.) The defendant explained that he needed money and that he had taken the rifle with the intent to commit a robbery elsewhere and then return the rifle to its proper place in the victim's home before the burglary was discovered. He claimed that he was just borrowing the rifle. (*Id.* at p. 424.) The trial court did not commit itself to the truth of the defendant's explanatory statement and found the defendant guilty. The appellate court affirmed the conviction. "Even assuming defendant's explanation to be true, it does not follow that [the

---

[5]The concept of an intent to deprive an owner of the main value of his property as the equivalent of the intent to permanently deprive an owner of property has been tested in another area of common law larceny, the area of asportation, the carrying away of the property of another. For example, as to the killing of animals as sufficient asportation, "[i]t is not necessary to remove the entire animal. If the animal is killed by the defendant and he then removes *any part of it*, there is an asportation of the animal." (3 Wharton's Criminal Law (15th ed. 1995) Larceny, § 368, p. 431, italics added.) So if defendant shoots a cow and kills it instantly but does not move it, the butchering of the cow by taking and carrying away a large prime rib without moving the rest of the carcass is grand larceny of the cow rather than petty theft of the prime rib. By taking and carrying away a major part, the owner has been deprived of the whole, his cow. (See Boyce & Perkins, Criminal Law and Procedure, Cases and Materials (8th ed. 1999) Offenses Against Property, § 1(E), p. 277, fn. a.)

victim] *would not have been permanently deprived of his rifle.* Its wrongful use in the perpetration of a crime would undoubtedly place the rifle beyond defendant's ability to return it and create an *unreasonable risk* of permanent loss of the weapon. If defendant was successful in the commission of the robbery, . . . it is likely he would continue to use the rifle in further criminal activity and not bother to return it—or if he did try to return the weapon, he *would be compelled to do so surreptitiously, for to return it openly would link him in any crime in which the weapon was used;* and if defendant was unsuccessful in committing the robbery, the rifle in all probability would also find its way into police custody. More reasonable is the view that having engaged in criminal activity with the rifle defendant would neither be able to return the rifle nor bother to do so." (*Id.* at p. 426, italics added.)

More recently in *People v. Kwok* (1998) 63 Cal.App.4th 1236 [75 Cal.Rptr.2d 40], the court upheld a conviction of burglary by finding that the temporary removal of a door lock for the purpose of making a duplicate house key constituted theft. The court noted that " 'although the owner may retain possession of the original property, there has been nevertheless a deprivation of property when a copy is made and retained by another.' " (*Id.* at pp. 1249-1251.)

Common law and California cases thus establish that an intent to steal will be recognized when personal property is dealt with in such a way as to create an unreasonable risk of permanent loss. "It is, of course, not very helpful to say that to be guilty of stealing property one must have an intent to steal the property. It is more helpful to state (as it is sometimes put) that, for larceny, one must intend to deprive the owner of the possession of his property either permanently or for an unreasonable length of time, or intend to use it in such a way that the owner will probably be thus deprived of his property." (2 LaFave & Scott, Substantive Criminal Law (1986) Crimes Relating to Property, § 8.5, p. 357.)

██ In addition to the common law, legal commentators and California case law, the Oregon Legislature has addressed the mens rea requirement of theft by larceny. The commentary to Oregon Revised Statutes section 164.005 states that " 'appropriate' and 'deprive' [are] both fundamental to a definition of the requisite intent on the part of the thief to exert permanent or *virtually* permanent control over the property taken, or to cause permanent or *virtually* permanent loss to the owner of the possession and use thereof. These definitions retain the traditional distinction between larceny and some other offenses which, though similar, do not reach the stature of larceny because of a lesser intent to obtain temporary possession or use of the

property or to cause temporary loss to the owner. [Citations.]" (Oregon Criminal Code of 1971 (Or. Dist. Attys. Assn. Dec. 1975) Offenses Against Property, com. to Or. Rev. Stat. § 164.005, p. 165, italics added.)

The Oregon theft statute, in following the rationale of the Model Penal Code,[6] but employing its own structure, did not abrogate the common law larceny requirement of intent to permanently deprive. Donald L. Paillette, as a member of the Oregon State Bar and project director of the Oregon Criminal Law Revision Commission, wrote that the changes made by the Oregon Criminal Code of 1971 included two terms, "appropriate" and "deprive" that "are essential to establishing the requisite intent on the part of the thief to exert *permanent or virtually permanent control over* the property, or to cause permanent or *virtually permanent loss of possession* and use to the owner. This feature distinguishes 'theft' from some similar misappropriation offenses which require a lesser intent to obtain temporary possession or use of property or cause temporary loss to the owner." (Paillette, *The Oregon Theft Laws: Consolidation v. Conglomeration* (1972) 51 Or. L.Rev. 525, 529, italics added.)

Unlike some other states, the Oregon Legislature did not supersede the common law concept of an intent to " 'permanently deprive.' "[7]

We conclude that *Marquez* was wrongly decided in that no new ground was broken in Oregon's statutory definition of theft. The Oregon statutory scheme makes clear that theft has a subjective mental state (a purpose to deprive) and that an intent by one to do less than retain property permanently will constitute theft when the owner's property was dealt with in such a way that there was a substantial risk of permanent loss.

### D. *The Actus Reus of Theft*

Oregon, like many other states following the Model Penal Code, has abandoned the common law asportation requirement in larceny. (2 ALI, Model Pen. Code & Commentaries, *supra*, Theft by Unlawful Taking, § 223.2, pp. 163-164.) Because the definition of " 'obtain' " has extended

---

[6] 2 American Law Institute, Model Penal Code and Commentaries (1980) General Theft Provisions, sections 223.0 to 223.1, pages 124-162.

[7] The Washington Legislature abrogated the common law theft requirement in its statute. Unlike Oregon, the Washington legislative history indicated an intent to omit the concept of an intent to " 'permanently' " deprive. The statute also incorporated intellectual property into the concept of theft. (*State v. Komok* (1989) 113 Wash.2d 810 [783 P.2d 1061, 1063-1064].)

the common law concept of taking to include the constructive acquisition of property, asportation or carrying away of the property is not required. (Oregon Criminal Code of 1971, *supra*, com. to Or. Rev. Stat. § 164.005, p. 165.) "Since larceny was generally a felony and attempt a misdemeanor, important differences in procedure and punishment turned on the criminologically insignificant fact of slight movement of the object of the theft. Under Section 5.01 of the Model [Penal] Code, and in modern criminal law generally, differences in penal consequences between attempt and completed crime are minimized, so that it becomes less important where the line is drawn between them. It is clear, moreover, that similar penalties for the attempt and the completed offense make obsolete any reference to the concept of 'asportation'; the same penal consequences follow whether or not an 'asportation' has occurred." (2 ALI, Model Pen. Code & Commentaries, *supra*, § 223.2, p. 164.)

It is clear that the statutory definition of a theft in Oregon does not contain the essential asportation element of a California theft (§ 484). As distinguished from an attempt, in California, the crime of larceny requires asportation (carrying away), as well as the taking (caption). (*People v. Meyer* (1888) 75 Cal. 383, 385 [17 P. 431]; *People v. Khoury* (1980) 108 Cal.App.3d Supp. 1, 4 [166 Cal.Rptr. 705].)

However, appellant's prior Oregon conviction qualifies as a strike within the meaning of California law. The Oregon indictment went beyond the minimum terms of the Oregon statute and stated that appellant "enter[ed] . . . a dwelling located at 281205 Mill Creek Road, Prineville, [Oregon,] with the intent to commit the crime of theft therein." The amended judgment ordered that defendant pay restitution in the amount of $1,030.89 to "Steve and Anita Krier 281205 Mill Creek Road, Prineville, Or 97754." "This amount shall be reduced if additional property is recovered in satisfactory condition upon motion of the State of Oregon." A reasonable inference from this record is that personal property was carried away from the burglarized premises. The Oregon court records thus provide reliable evidence that the Oregon prior conviction was the equivalent of a California burglary and theft conviction. (See *People v. Woodell* (1998) 17 Cal.4th 448, 450-451 [71 Cal.Rptr.2d 241, 950 P.2d 85].)

Substantial evidence supports the court's conclusion that the Oregon "[b]urglary in the [f]irst [d]egree" was properly alleged and proven as a strike pursuant to section 1170.12, subdivision (c)(1). (See *People v. Jones* (1995) 37 Cal.App.4th 1312, 1315 [44 Cal.Rptr.2d 552].)

## DISPOSITION

The judgment is affirmed.

Reardon, Acting P. J., and Kay, J., concurred.