NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

NOV 2 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CHRISTINA SATO; ROXANNE LOPEZ; DILEY GREISER; CHELSEA WARD; JAMIE GREGORY, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> COUNTY OF SAN BERNARDINO; J. GREGORY, San Bernardino Sheriff's Deputy, an individual; DARREN GILMORE, San Bernardino Sheriff's Sergeant, an individual; BRIAN GRIMM, San Bernardino County Sheriff's Detective, an individual; DOES, 1-10, <br><br> Defendants-Appellees. | No. 22-55853 <br><br> D.C. No. 5:20-cv-01876-JGB-SP <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
Jesus G. Bernal, District Judge, Presiding

Argued and Submitted October 2, 2023
Pasadena, California

Before: GRABER, BYBEE, and BENNETT, Circuit Judges.

Plaintiffs Christina Sato, Roxanne Lopez, Diley Greiser, Chelsea Ward, and

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Jamie Gregory sued defendants Detective Brian Grimm and Sergeant Darren Gilmore[1] (collectively, "officer defendants"), as well as San Bernardino County, alleging two causes of action: (1) violation of 42 U.S.C. § 1983 based on deprivation of Fourth Amendment rights against the officer defendants; and (2) municipal liability under § 1983 against the County. Plaintiffs appeal the district court's grant of summary judgment to defendants. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, and reviewing de novo, *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 672 (9th Cir. 2018), we **AFFIRM**.

Before the present civil case, law enforcement officers, including Detective Grimm, obtained search warrants for Sato's, Greiser's, Ward's, and Gregory's homes to locate evidence and information about the alleged crime of grand theft of German Shepherd dogs from Alla Zorikova's property.[2]

1.      The district court correctly granted summary judgment to Detective Grimm on plaintiffs' claim of judicial deception.[3] To survive summary judgment

---

[1] Plaintiffs also sued defendant Deputy John Gregory. The district court granted summary judgment to Gregory because "[h]e was not involved in obtaining the search warrants" and "was not present for the searches of the homes of Greiser, Ward, or Gregory." Plaintiffs did not appeal that ruling.

[2] Zorikova and Olivia Jeong, who was on Zorikova's property when they both were arrested, were subsequently investigated for animal cruelty, though charges were never filed against them.

[3] At the district court, plaintiffs alleged that both Detective Grimm and Sergeant Gilmore engaged in judicial deception, but on appeal argue only that Detective Grimm engaged in judicial deception.

on their judicial deception claim, plaintiffs "must (1) establish that the warrant affidavit contained misrepresentations or omissions material to the finding of probable cause, and (2) make a 'substantial showing' that the misrepresentations or omissions were made intentionally or with reckless disregard for the truth." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011).[4]

Plaintiffs have not identified evidence that demonstrates that Detective Grimm engaged in judicial deception. First, Detective Grimm had probable cause to believe, at the time of applying for the warrants, that the homes of Sato (which she shared with her daughter, Lopez), Greiser, Ward, and Gregory contained information regarding the location of the missing Zorikova dogs.[5] From August

---

[4] Misrepresentations and omissions are material where "the affidavit purged of those falsities and supplemented by the omissions would not be sufficient to support a finding of probable cause." *United States v. Stanert*, 762 F.2d 775, 782, *amended by* 769 F.2d 1410 (9th Cir. 1985). "The effect of the misrepresentations and omissions on the existence of probable cause is considered cumulatively." *Id.* We "must determine, therefore, whether the affidavit, once corrected and supplemented, would provide a magistrate with a substantial basis for concluding that probable cause existed." *Id.*

[5] Under California law, grand theft—i.e., the unlawful taking of another's property with a value greater than $950—is a criminal act. Cal. Penal Code § 487. The mens rea of theft requires "the intent to permanently deprive a person of property." *People v. Zangari*, 108 Cal. Rptr. 2d 250, 254 (Cal. Ct. App. 2001). "The crime of grand theft is complete when a man takes property not his own with the intent to take it . . . ." *People v. Hunter*, 305 P.2d 608, 609 (Cal. Dist. Ct. App. 1957). Probable cause to search is established when the affidavit states facts that make it reasonable to believe that there is specific property lawfully subject to seizure presently located in the particular place for which the warrant was sought. *See Theodor v. Superior Ct.*, 501 P.2d 234, 242 (Cal. 1972).

3

2020, until Detective Grimm submitted information in support of the warrants, Sato, Greiser, Ward, and Gregory explicitly and repeatedly admitted to taking possession of the dogs. The Facebook private thread that Detective Grimm referred to in his statements of probable cause featured statements from Sato and Gregory admitting explicitly to taking dogs. Greiser posted a picture of her Dodge truck at the Zorikova property, with a German Shepherd in the back. Ward called San Bernardino County Sheriff's Department ("San Bernardino") and said she was in possession of some of the German Shepherds. Through her counsel Casey Gish, Ward admitted to Detective Grimm that she had transported about 20 dogs to Las Vegas. Even plaintiffs' Opposition to the Motion for Summary Judgment stated that when the warrants issued: "Defendants already had evidence that Plaintiffs had been involved in *transporting* the dogs."

Second, the warrant affidavits did not contain misrepresentations or omissions material to the finding of probable cause. Plaintiffs argue that they lacked the specific intent for grand theft because Detective Grimm's affidavits omitted that Deputies Alexander and Parsons "called on [plaintiffs] to rescue German Shepherds abandoned in the desert who would otherwise die if not rescued." But plaintiffs have not presented any admissible evidence that Deputies Alexander or Parsons instructed or authorized plaintiffs to take the dogs, let alone that Detective Grimm knew about such instructions or authorizations at the time he

4

obtained the relevant warrants.[6]

2.    The district court correctly granted summary judgment to Sergeant

Gilmore on plaintiffs' claim of unreasonable force.

---

[6] The record contains a conversation between Gish (Ward's attorney) and Detective Grimm prior to the issuance of the warrants:

> Mr. Gish: So the way this came about is that a government whistleblower employed by San Bernardino County contacted certain California rescues and asked for their assistance in rescuing German Shepherd dogs that were left abandoned in the middle of the desert outside Barstow. Once the rescuers arrived at the site they were instructed by the California, or the San Bernardino County employee whistleblower. She entered the land and removed the rescue.
>
> Officer: So you say San Bernardino County and . . . .
>
> Mr. Gish: Removed the dogs, removed the dogs.
>
> Officer: You say San Bernardino County employee. Do you know what agency they worked for for San Bernardino County?
>
> Mr. Gish: Yes I do, but I'm not going to disclose that.
>
> Officer: Okay.

While Detective Grimm did disclose in the affidavit supporting probable cause that Gish refused to provide any information to him as to "who contacted him and . . . facilitated taking possession of the dogs," he did not disclose that Gish stated that it was a San Bernardino County employee who instructed plaintiffs what to do when they arrived at the site of the dogs. However, given the lack of specifics in what Gish was willing to say and the demanding standard for judicial deception, we believe that the test for judicial deception has not been met on the case-specific facts here.

On September 3, 2020, the officer defendants arrived at the home of Sato and Lopez. The parties disputed what happened next.[7] We view the admissible evidence in the light most favorable to plaintiffs.

The district court analyzed plaintiffs' claim of unreasonable force in two steps. First, applying the Fourth Amendment's objective-reasonableness standard under *Graham v. Connor*,[8] as well as the factors to evaluate reasonableness under *Liston v. County of Riverside*,[9] the district court found that Sergeant Gilmore's

---

[7] Defendants claimed that "Lopez . . . refused to cooperate with the deputies and refused to follow instructions" and that "Lopez was . . . aggressive, physically resistant, and directed obscenities at the deputies." Defendants also claimed that Sergeant Gilmore performed a control hold on Lopez "with care as he was trained to do in the academy" and that "the cast on . . . Lopez's right forearm was not grabbed nor forcefully touched by the deputies."

Plaintiffs claimed that (1) the deputies "did not give Lopez any instructions, . . . grabbed Lopez by her casted arm[,] and pinned her other arm behind her back"; (2) the deputies "refused to tell Lopez what was going on and could clearly see she was injured"; and (3) "[a]t no time was Lopez acting 'aggressively.'" However, plaintiffs' cited evidence does not indicate that the deputies gave no instructions to Lopez. In addition, Lopez testified that she was "really distressed" and "not knowing what was going on" and that she "may have cursed" when the deputies asked who she was.

[8] 490 U.S. 386 (1989). The reasonableness of a use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Thus, "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citations and quotations omitted).

[9] 120 F.3d 965 (9th Cir. 1997), *as amended* (Oct. 9, 1997). Factors to consider in evaluating the reasonableness of force used to effect a seizure include "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect actively resists detention or attempts to escape." *Id.* at 976.

6

control hold on Lopez was not unreasonable. Second, the district court found that "even if [Sergeant] Gilmore's use of force *were* unreasonable, Gilmore is entitled to qualified immunity on this claim."

We need not decide whether Sergeant Gilmore's use of force was reasonable because we agree with the district court that qualified immunity compels the grant of summary judgment on this claim. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam). Once a defendant has raised qualified immunity as a defense to a claim, a plaintiff must show "(1) that the right was violated; and (2) that the right was clearly established at the time of the alleged misconduct." *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017). Although a right is not clearly established where merely defined "at a high level of generality," qualified immunity does not "require a case directly on point." *Kisela*, 138 S. Ct. at 1152. Instead, the "focus is on whether the officer had fair notice that her conduct was unlawful," *id.*, for example, through "any cases of controlling authority in their jurisdiction at the time of the incident," *Wilson v. Layne*, 526 U.S. 603, 617 (1999).

Plaintiffs "bear[] the burden of showing that the right at issue was clearly established." *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011). But plaintiffs

7

cite no authority establishing that Sergeant Gilmore was on notice that his conduct, even viewed in the light most favorable to plaintiffs, would violate Lopez's constitutional rights.[10]

      3.     Plaintiffs' final claim on appeal—that "the County withheld [their] property for an unreasonable length of time due to the actions of a final policymaking official, [i.e, Detective Josh Guerry]"—also fails. This cause of action, against the County, is based on *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978), which allows a plaintiff to "prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992). Here, plaintiffs claim that Detective Guerry is an official with final policy-making authority who ratified unconstitutional actions, thus making the County liable.

      The County waited 18 months to return the devices that were seized from plaintiffs. But even putting that to the side, plaintiffs have not shown that Detective Guerry was responsible for the deprivation or was an official with final

---

[10] Lopez's qualified immunity argument repeats plaintiffs' judicial deception argument. But Lopez's argument is not persuasive for three reasons. First, we see no reason why alleged material omissions or misrepresentations in an affidavit by Detective Grimm would destroy the qualified immunity of Sergeant Gilmore. Second, even were that wrong, there is no evidence Sergeant Gilmore knew of the alleged misinformation. And third, we held above that Detective Grimm did not engage in judicial deception.

policy-making authority who ratified the deprivation. Plaintiffs cite Detective Guerry's testimony that he was the case agent and claim that he was the only one who could have authorized release of the property on behalf of the County. But Detective Guerry *or* a supervisor could have authorized the release of the property, so Detective Guerry was never the sole decisionmaker. Moreover, Detective Guerry was one of two decisionmakers for only a portion of the time during which plaintiffs were deprived of their devices. The County issued its decline-to-charge letter as to plaintiffs in October 2021. Then, plaintiffs requested the return of their devices, but Detective Guerry had been transferred off Specialized Investigations by that point and was no longer the case agent assigned to plaintiffs' case. It took three months for the new case agent, Detective Young, to receive plaintiffs' letter. And then it took another two months for plaintiffs to receive their devices in March 2022. Therefore, for the period that it was clear the District Attorney would not be charging plaintiffs and plaintiffs had an outstanding request for their devices that was not acted on, Detective Guerry was not even the assigned case agent—and therefore did not have *any* decision-making authority as to their devices.

**AFFIRMED.**

Judge Graber concurs in the judgment.

9