Filed 6/9/14  P. v. McGruder CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>DERICK TYRONE MCGRUDER,<br><br>　　　Defendant and Appellant. | B245785<br><br>(Los Angeles County<br>Super. Ct. No. TA123817) |

　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Laura R. Walton, Judge.  Affirmed.

　　　Alexander Paul Green, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Peggy Z. Huang, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Derick Tyrone McGruder appeals from the judgment entered following his convictions by jury on count 1 – first degree burglary with a person present (Pen. Code, §§ 459, 667.5, subd. (c)(21)) and count 2 – assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)) with admissions he suffered a prior felony conviction (Pen. Code, § 667, subd. (d)), a prior serious felony conviction (Pen. Code, § 667, subd. (a)(1)), and prior prison terms (Pen. Code, § 667.5, subd. (b)). The court sentenced appellant to prison for 13 years. We affirm.

### FACTUAL SUMMARY

1. *People's Evidence.*

Viewed in accordance with the usual rules on appeal (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established on June 27, 2012, Oscar Casillas lived in his house on South Essey in Compton. The front entrance to Casillas's house had two doors, i.e., a wooden front door (hereafter, front door) and a screen door. The screen door opened to the right of a person exiting the house.

Casillas testified as follows. About 1:15 p.m., Casillas was at home with his children and his wife's nephew. The front door was open because it was a hot day, but the screen door was closed. Casillas and his children were playing in the living room. The nephew was asleep.

Casillas saw appellant next to the screen door. Appellant's hands were cupped around his eyes and he began looking through the screen door. Casillas greeted appellant and asked, "What's going on?" Appellant replied, "All good. All good." After appellant looked through the screen door for a total of about five seconds, Casillas went to the front door.

Casillas opened the screen door, erroneously thinking appellant was a neighbor. Appellant, whom Casillas did not know, asked who else lived with Casillas. Casillas thought the question was strange but replied his family and nephew lived with Casillas.

Appellant grabbed the screen door with his left hand.[1] Casillas said he had to go and needed to take a bath because he was going to work. Appellant, using his open right hand, grabbed the doorframe where the front door normally closed (hereafter, doorframe). (That doorframe apparently was on the left of a person exiting the house.) Appellant's right hand was extended and his fingers were bent. Casillas testified the fingertips of appellant's right hand were "inside" "where the door was." Appellant was trying to enter. He was saying, "Wait, don't leave. Don't close it. I'm thirsty. Give me water." Casillas felt he needed to close the screen door, in part because he did not want his children frightened.

Appellant's left foot was at the screen door. He positioned his right foot as if he wanted to enter. Appellant took a step "inside" and his right foot was "halfway into [Casillas's] door." Appellant's right foot "was . . . half in and half outside" and "crossing the threshold to [Casillas's] building."

The prosecutor asked what was Casillas thinking when appellant "put his feet in through the door" and Casillas indicated he thought appellant was going to enter. The prosecutor asked what happened after appellant "put his feet in there," and Casillas replied appellant was telling Casillas to give appellant water.

Casillas started pulling on the screen door and appellant was pulling the other way. Casillas yelled to his daughter to call the police. Appellant grabbed the screen door with both hands. Casillas, grasping the handle of the screen door, was trying to exit so the screen door would close and lock behind him. Casillas was concerned "if [appellant] had something and he entered, [Casillas's] children were going to be there." Casillas's four children were most important to him.

Appellant released the screen door and began hitting Casillas with appellant's fist. When appellant hit Casillas the first time, Casillas was "between outside and inside."

---

[1] During his testimony, Casillas frequently referred to one of appellant's hands or feet without explicitly identifying it as appellant's left or right hand, or left or right foot. However, where the record, fairly read, indicates which hand or foot Casillas was referring to, we identify it below.

Casillas later testified the first few times appellant hit Casillas, Casillas was inside his house and appellant was outside. Appellant hit Casillas about three times in the head. When appellant was inflicting the first blows, Casillas's head was hitting a wall.

Casillas exited and the screen door closed and locked. Appellant hit Casillas perhaps four more times in the head. Appellant was quickly hitting Casillas with both fists as if appellant wanted to knock Casillas out. Because of the blows, Casillas felt dizzy and fell into nearby bushes. Casillas never pushed or struck appellant.

After appellant struck Casillas the third or fourth time outside, Casillas yelled to his daughter to call the police. After Casillas yelled the third time to his daughter to call the police, Casillas's daughter began yelling at appellant. Appellant later left.

Appellant walked around the front of Casillas's house, crossed the street, and walked parallel to the side of Casillas's house. Appellant was looking towards Casillas's house, its backyard, and the house's side windows. Appellant was looking at Casillas's house as if appellant was trying to see something or wanted to jump over something. This made Casillas think appellant perhaps was on drugs. Appellant's grandmother, who lived in a house catercorner to Casillas's house, called for appellant and he went to his grandmother's house.

As a result of appellant's blows, Casillas bled profusely from his nose and mouth, his face and mouth were swollen, and he received scratches. Cuts on Casillas's lip remained perhaps four days. Casillas did not seek medical treatment because he could not afford it.

During cross-examination, Casillas testified as follows. When appellant initially approached and was talking to Casillas, appellant's left hand was on the screen door and Casillas believed appellant's right hand "had entered the doorway." Later, appellant's right foot was "in" when appellant told Casillas to wait and give water to appellant. When Casillas was trying to close the screen door, he thought that, based on what appellant was doing, appellant might have been under the influence of narcotics or alcohol. However, appellant did not need assistance to stand.

4

The following occurred between appellant's counsel and Casillas: "Q. So at this time, his foot's in the door, his hand's in the doorway, and he says, 'Wait. Don't go. Give me some water. I'm thirsty'? [¶] A. Yes." Casillas replied to appellant, " 'No. Why? I already have to go to work.' "

Los Angeles County Sheriff's Deputy Ignacio Garcia went to the scene and saw appellant was uninjured. Appellant's grandmother told Garcia appellant previously had used methamphetamine. However, Garcia opined at trial appellant was not under the influence when Garcia contacted him. According to Garcia, some methamphetamine users used methamphetamine two or three days at a time. Such users might be dehydrated and want water.

2. *Defense Evidence.*

In defense, Casillas testified that, at the preliminary hearing, the magistrate asked Casillas "was any part of the defendant's body inside your home" and Casillas replied no.[2] Casillas denied that, after the preliminary hearing, he had any contact with prosecutors or investigators in this case. At trial, during cross-examination by the prosecutor, Casillas testified that when the magistrate asked the above question, Casillas "thought [the magistrate] was referring to like part of the body, maybe the whole body, maybe half the body, not like just the hands or the foot."

The prosecutor, indicating he was trying to clarify Casillas's testimony on the above issue, elicited testimony from Casillas at trial that, at the preliminary hearing, he testified ". . . [appellant] had his foot already. He just was trying to go inside." The following exchange also occurred at trial between the prosecutor and Casillas: "Q. Again, page 6 of the preliminary hearing, do you remember saying: [¶] 'The Witness: He was in between the line in the middle, in the middle maybe. Maybe in the middle.' [¶] His foot was in the

---

**2** Appellant's counsel asked Casillas if, at the preliminary hearing, the following exchange occurred between counsel and Casillas: "So you were able to close your front door before the defendant started hitting? [¶] '[A.] Thank God, yes, I was able to close it. If not, I don't know.' " Casillas testified, "Yes, I said it, maybe, . . . but it was not like that. [Appellant] started hitting me before that."

5

middle of the door?  That's a question.  [¶]  A.  Yes.  [¶]  Q.  Do you remember saying that?  [¶]  A.  Yes." (*Sic*.)  At trial, Casillas testified the "little snippet" appellant's trial counsel had read did not accurately reflect Casillas's preliminary hearing testimony.

During redirect examination by appellant at trial, Casillas testified that when he was asked (by the magistrate) if any part of appellant's body was inside Casillas's home, Casillas "took [the question] to mean some other part of the body."  When Casillas indicated the right foot "was maybe in the middle," he was not indicating uncertainty concerning whether appellant's foot was "crossing."  Casillas testified, "I was saying that maybe half or maybe more than half, but yes, it was crossing."

Appellant's grandmother testified appellant was under the influence of a drug on the day of the incident and two days before.  She gave officers information regarding appellant being under the influence.

### ISSUES

Appellant claims (1) there is insufficient evidence supporting his burglary conviction, (2) the trial court erroneously failed to instruct sua sponte on attempted burglary as a lesser included offense of burglary, and (3) appellant was denied effective assistance of counsel by his trial counsel's failure to ask the trial court for such an instruction.

### DISCUSSION

1.  *Sufficient Evidence Supported Appellant's Burglary Conviction.*

Appellant claims there is insufficient evidence supporting his burglary conviction. He argues there was insufficient evidence he entered Casillas's house, and insufficient evidence of burglarious intent at the time of any entry.[3]  We reject appellant's claim.

In *Magness v. Superior Court* (2012) 54 Cal.4th 270, 273 (*Magness*), our Supreme Court stated a person who enters any house with intent to commit larceny or any felony is guilty of burglary, and it has long been settled the slightest entry by any part of the body is

_____

[3]     The trial court, using CALCRIM No. 1700, instructed the jury that to prove appellant was guilty of burglary, the People had to prove he entered a house and "[w]hen he entered a house, he intended to commit a theft or an assault likely to produce great bodily injury."

6

sufficient.  Quoting Blackstone, *Magness* observed, " 'As for the entry, . . . the least degree of it, with any part of the body, . . . is sufficient:  as, to step over the threshold, [and other examples], . . . all of them [are] burglarious entries.'  (4 Blackstone's Commentaries 227, fn. omitted.)"  (*Magness,* at p. 273.)

In order for an entry to occur, a part of the body must penetrate the outer boundary of the building.  (*Magness, supra*, 54 Cal.4th at p. 273.)  " '[I]n general, . . . doors . . . constitute . . . [a part] of a building's outer boundary, the penetration of which is sufficient for entry.'  [Citation.]"  (*Id.* at p. 274.)  " '[I]t no longer matters whether a person entering a house with larcenous or felonious intent does so through a closed door . . . [or] an open door . . . .  The entry with the requisite intent constitutes the burglary.'  (*People v. Gauze* [(1975)] 15 Cal.3d [709,] 712-713, . . .)"  (*People v. Nunley* (1985) 168 Cal.App.3d 225, 231.)  As to whether appellant entered Casillas's house, there was substantial evidence from Casillas's testimony as a People's witness as follows.  Appellant's fingertips were "inside" where the door was.  The front door was open, so Casillas's testimony, reasonably understood, was appellant's fingertips were "inside" the doorframe.  But Casillas also testified appellant, with his right foot, took a step "inside," and Casillas described appellant's right foot as "crossing the threshold to [Casillas's] building."  The jury therefore reasonably could have concluded when Casillas testified appellant's fingertips were "inside" where the door was, Casillas meant they too had crossed the threshold of Casillas's building.  Casillas also testified appellant's right hand had "entered" the doorway.

The jury reasonably could have concluded appellant struggled to enter Casillas's house and, during that struggle, appellant, using his right hand, was reaching inside Casillas's house to obtain a secure grip on the doorframe to pull appellant's entire body inside Casillas's house.  We conclude there was sufficient evidence to convince a rational trier of fact, beyond a reasonable doubt, appellant's right hand "enter[ed]" Casillas's house within the meaning of Penal Code section 459.

Moreover, appellant, using his right foot, took a step "inside," and his right foot was "halfway into [Casillas's] door," "half in and half outside," and "crossing the threshold to

7

[Casillas's] building." Appellant's right foot was "in" and he had his right "foot[ ] in the door." The jury reasonably could have concluded that during appellant's struggle, he was putting his right foot into Casillas's house in an effort to enter completely. We conclude there was sufficient evidence to convince a rational trier of fact, beyond a reasonable doubt, appellant's right foot "enter[ed]" Casillas's house within the meaning of Penal Code section 459.

Finally, at one point Casillas started pulling on the screen door and appellant was pulling the other way. Appellant later began hitting Casillas with appellant's fist. The first few times appellant hit Casillas, Casillas was inside the house and appellant was outside. Appellant hit Casillas about three times in the head and when appellant inflicted the first blows, Casillas's head was hitting a wall.

After Casillas exited his house appellant quickly struck him multiple times with both fists as if he wanted to knock Casillas out. Casillas felt dizzy and fell. Casillas bled profusely from his nose and mouth, his face and mouth were swollen, and cuts on his lip lasted perhaps four days. We conclude there was sufficient evidence to convince a rational trier of fact, beyond a reasonable doubt, when appellant repeatedly struck Casillas the first few times with appellant's fist while Casillas was inside his house, appellant "enter[ed]" the house within the meaning of Penal Code section 459.

As to appellant's intent upon the entries, in *People v. Kwok* (1998) 63 Cal.App.4th 1236, 1245, the court stated, "Because intent is rarely susceptible of direct proof, it may be inferred from all the facts and circumstances disclosed by the evidence." Appellant's above mentioned entries into Casillas's house as established by the People's evidence were nonconsensual and unlawful. Burglarious intent reasonably may be inferred from an unlawful entry alone. (*People v. Martin* (1969) 275 Cal.App.2d 334, 339; *People v. Wolfe* (1967) 257 Cal.App.2d 420, 425.) For this independent reason, we conclude appellant's entries into Casillas's house were accompanied by burglarious intent.

Moreover, Casillas testified appellant repeatedly struck Casillas with appellant's fist while Casillas was inside, and appellant was outside, Casillas's house, causing Casillas's head to strike the *wall.* Appellant continued the assault after Casillas stepped outside, with

8

consequent injuries to Casillas. "Punishment under [Penal Code] section 245, subdivision (a), is directed at the force used, and it is immaterial whether the force actually results in any injury. The focus is on force *likely* to produce great bodily injury. [Citation.]" (*People v. Parrish* (1985) 170 Cal.App.3d 336, 343, italics added.)

We conclude there was sufficient evidence to convince a rational trier of fact, beyond a reasonable doubt, when appellant entered the house with his right hand and right foot as previously discussed, and when appellant entered by repeatedly striking Casillas the first few times with appellant's fist while Casillas was inside his house, appellant entered with *intent* to commit upon Casillas assault by means of force likely to produce great bodily injury.

Further, "the taking of any item of personal property of even slight intrinsic value can constitute larceny in California." (*People v. Martinez* (2002) 95 Cal.App.4th 581, 586 (*Martinez*).)[4] Casillas, by trying to close the screen door, indicated to appellant that Casillas was not going to comply with appellant's repeated demands for water. Appellant began pulling the screen door the other way, resisting Casillas's effort to close it, and appellant later entered the house by striking Casillas while Casillas was still inside.

We conclude based on all the evidence there was sufficient evidence to convince a rational trier of fact, beyond a reasonable doubt, when appellant committed the above discussed entries into Casillas's house, appellant intended to commit larceny by stealing water inside.[5] Sufficient evidence supported appellant's burglary conviction (count 1).[6]

---

[4] *Martinez* concluded the intent of the defendant in that case to take a shower in a person's house without authorization was an intent to commit larceny because the defendant intended without authorization to use, and thus consume, the person's soap products, shampoo, and water. (*Martinez*, *supra*, 95 Cal.App.4th at pp. 584-586.) *Martinez* rejected the defendant's argument "the 'miniscule amount' of soap, shampoo and water used are not of sufficient value to qualify as property." (*Id.* at p. 585.)

[5] To the extent appellant argues there was insufficient evidence he intended to commit larceny because he was voluntarily intoxicated, we note that even if there was substantial evidence appellant was voluntarily intoxicated, there was no substantial evidence he was intoxicated to the point he failed to formulate an intent to commit larceny. (Cf. *People v. Marshall* (1996) 13 Cal.4th 799, 848; *People v. Ivans* (1992) 2 Cal.App.4th 1654, 1661-1662.)

2. *The Trial Court Did Not Err by Failing to Instruct on Attempted Burglary.*

Appellant claims the trial court erred by failing to instruct sua sponte on attempted burglary as a lesser included offense of burglary.[7] He argues there was substantial evidence (1) he did not enter the house, (2) he lacked intent to commit assault with force likely to produce great bodily injury at the time of any entry, and (3) he lacked "the required felonious intent" at any entry because he was under the influence of drugs. We reject appellant's claim.

If, as appellant suggests, the evidence established only that appellant attempted to enter Casillas's house without intent to commit assault with force likely to produce great bodily injury entry,[8] and without "the required felonious intent" because he was under the influence of drugs, then there was no evidence he committed attempted burglary because there was no evidence of burglarious intent. To that extent, there was no need for the trial

---

[6]     To the extent appellant argues the trial court erroneously denied his motion for a judgment of acquittal (made after the close of the People's evidence) as to his burglary count, our analysis applies to that argument as well since our analysis relies only on the People's evidence. (See *People v. Cole* (2004) 33 Cal.4th 1158, 1212-1213.) Accordingly, the trial court properly denied appellant's motion for a judgment of acquittal. Finally, to the extent appellant argues as an independent issue there was insufficient evidence supporting his conviction on count 2, he waived the issue by raising it for the first time in his reply brief. (Cf. *People v. Jackson* (1981) 121 Cal.App.3d 862, 873.) Moreover, in light of the evidence recited in our Factual Summary, including the evidence appellant delivered multiple blows to Casillas's head, the initial blows were causing Casillas's head to hit a wall, appellant was using both of his fists in an effort to knock Casillas unconscious, and Casillas fell, there was substantial evidence supporting appellant's conviction on count 2. (See *People v. Aguilar* (1997) 16 Cal.4th 1023, 1028; *Ochoa, supra,* 6 Cal.4th at p. 1206; *People v. Armstrong* (1992) 8 Cal.App.4th 1060, 1065-1066; *In re Nirran W.* (1989) 207 Cal.App.3d 1157, 1161-1162.)

[7]     "California law requires a trial court, sua sponte, to instruct fully on all lesser necessarily included offenses supported by the evidence." (*People v. Breverman* (1998) 19 Cal.4th 142, 148-149 (*Breverman*).) We review error on this issue for prejudice under the standard enunciated in *People v. Watson* (1956) 46 Cal.2d 818, 836. (*Breverman,* at p. 149.)

[8]     Appellant argues Casillas's alleged preliminary hearing testimony Casillas was able to close his front door before appellant started hitting him (see fn. 2, *ante*) was substantial evidence appellant lacked intent to commit assault by means of force likely to produce great bodily injury.

court to instruct on attempted burglary because there was no substantial evidence to support that instruction.

In light of appellant's arguments he lacked intent to commit assault with force likely to produce great bodily injury, and lacked intent to commit a felony, his instructional claim the trial court erred by failing to instruct on attempted burglary implicitly concedes there was substantial evidence he attempted to enter Casillas's house with intent to commit larceny. Appellant, relying solely on Casillas's defense testimony at trial that, at the preliminary hearing, Casillas denied any part of appellant's body was inside Casillas's house, argues there was substantial evidence he did not enter; therefore, there was substantial evidence he *only* attempted to enter with intent to commit larceny.

We assume without deciding that, as argued by appellant, there was substantial evidence he only attempted to enter Casillas's house with intent to steal, and the trial court erred by failing to instruct sua sponte on attempted burglary as a lesser included offense of burglary. However, we must review the matter for prejudice.

As mentioned, the sole evidence on which appellant relies to argue he did not enter Casillas's home was Casillas's denial testimony. However, Casillas substantially qualified that denial. He testified as a defense witness he thought the magistrate "was referring to like part of the body, maybe the whole body, maybe half the body, not like just the hands or the foot." That testimony, reasonably understood, was Casillas thought the magistrate was referring to a substantial portion, such as half, of appellant's body. Casillas did not think the magistrate was referring merely to a hand, foot, or fingertip. As a matter of the credibility of this qualifying testimony, the jury essentially had only to decide whether it was true or a fabrication. The jury, having convicted appellant of burglary, implicitly found true this qualifying testimony.

Moreover, the prosecutor at trial elicited clarifying testimony from Casillas that, at the preliminary hearing, he testified about (1) appellant's foot, (2) the fact appellant was trying to enter, and (3) the middle of the door, i.e., testimony corroborating Casillas's denial was qualified. Casillas testified at trial the "little snippet" of his preliminary hearing testimony appellant's trial counsel had read at trial did not accurately reflect Casillas's

11

preliminary hearing testimony. During redirect examination by *appellant* at trial, Casillas made clear he was certain appellant's right foot was "crossing" and any uncertainty related only to whether appellant's right foot crossed "maybe half or maybe more than half." There was ample evidence from the People's case appellant's right hand, right foot, and fist entered Casillas's house, and, at the time of the entries, appellant intended to commit assault by means of force likely to produce great bodily injury,[9] and intended to steal.

In sum, even if there was substantial evidence appellant only attempted to enter Casillas's house with intent to steal, the rest of the evidence in this case provided such ample evidence appellant entered with intent to commit assault by means of force likely to produce great bodily injury, and with intent to steal, it is not reasonably probable a different result would have occurred if the court had instructed on attempted burglary as a lesser included offense of burglary.[10] The alleged instructional error was not prejudicial. (See *Breverman, supra*, 19 Cal.4th at p. 149.)

---

[9] Casillas's trial testimony about his preliminary hearing testimony (see fns. 2 and 8, *ante*) concerning whether he was able to close the front door before appellant started hitting him was equivocal, and Casillas testified at trial to the effect said preliminary hearing testimony did not reflect what had happened and appellant had begun hitting Casillas before Casillas closed the door. Casillas's preliminary hearing testimony conveys the impression he was less focused on whether he was able to close the door before appellant started hitting him and more focused and thankful he was able to close it to protect his children. Even if Casillas's preliminary hearing testimony about closing the door was substantial evidence he lacked intent to commit assault by means of force likely to produce great bodily injury, there was, as we previously have discussed, ample evidence of that intent.

[10] We realize, as appellant observes, the jury requested a readback of testimony and later indicated it was deadlocked on the burglary charge, and the jury reached a verdict on that charge only after the court told the jury to continue deliberating. However, the jury requested a readback of testimony pertaining only to whether Casillas "was inside the house when the first punch was thrown." This suggested that, at the time of the jury's request, the jury was focusing on whether appellant entered Casillas's house by reaching into it and striking Casillas with a single blow, and not on the ample and previously discussed evidence: (1) appellant repeatedly hit Casillas while Casillas was inside his house, (2) appellant's right hand entered when he grabbed the doorframe, (3) appellant's right foot entered, and (4) appellant, at the time of the entries, intended to commit assault by means of force likely to produce great bodily injury, and intended to steal. Moreover, the court observed the jury had deliberated for a total of less than two hours before it requested the readback, the court then excused the jury

3. *Appellant's Trial Counsel Did Not Provide Ineffective Assistance of Counsel.*

Appellant claims his trial counsel provided ineffective assistance of counsel by failing to request an instruction on attempted burglary as a lesser included offense of burglary. We disagree. The record sheds no light on why appellant's trial counsel failed to act in the manner challenged, the record does not reflect said counsel was asked for an explanation and failed to provide one, and we cannot say there simply could have been no satisfactory explanation. We reject appellant's ineffective assistance claim. (See *People v. Slaughter* (2002) 27 Cal.4th 1187, 1219; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217.)

Moreover, our analysis in parts 1 and 2 of our Discussion provides satisfactory explanations why appellant's trial counsel did not request an attempted burglary instruction. As a matter of tactics, appellant's counsel reasonably might have wanted to present the jury with an all-or-nothing choice of convicting or acquitting appellant of burglary. Appellant's counsel reasonably could have concluded the jury would not have convicted appellant merely of attempted burglary by relying on the evidence appellant now argues would have supported such a conviction.

---

for the day, the jury heard the 10-minute readback the next morning and resumed deliberations, and within 15 minutes told the court the jury was deadlocked. That is, the court ordered the jury to continue deliberating because the court felt the jury had not spent sufficient time deliberating.

### *DISPOSITION*

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**

KITCHING, J.

We concur:

KLEIN, P. J.                                        ALDRICH, J.

14